## APPEAL OF CLARA RYON.

### [ESTATE OF ESTHER MAGINNIS.]

FROM THE DECREE OF THE ORPHANS' COURT OF SCHUYLKILL COUNTY.

Argued February 20, 1889—Decided March 11, 1889.

(a) A testatrix having an undivided interest in realty subject to the curtesy estate of her father, provided by her will: "As to such estate, as it has pleased God to entrust me with, I dispose of the same as follows: " Then follow certain legacies, after which the will proceeded :

(b) "As to the remainder of my interest . . . . . I direct that . . . . . it shall be disposed of as follows, viz. : If said estate is sold before the death of my beloved father, then one half of said remainder shall be paid to him absolutely, and the remaining half shall be given to my sister, Mrs. Clara Ryon."

1. In such case, though it may have been the intention of the testatrix to dispose of the whole of her estate, the provision for her father was clearly conditioned upon a sale of the land in his lifetime, but that for her sister was independent of any condition.

2. That the condition upon which one half of the remainder should be paid to her father having failed by reason of his death before the sale of the land, the provision for him lapsed and was to be distributed to the heirs at law of the testatrix under the intestate laws.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

No. 344 January Term 1889, Sup. Ct.; court below, No.
. . . . 1888, O. C.

In the distribution of the estate of Esther Maginnis, de-
ceased, by *Mr. J. W. Moyer*, auditor appointed for the purpose,
it was shown by the testimony that Margaret Maginnis died at
Pottsville on July 5, 1868, leaving to survive her a husband,
John Maginnis, and four children, to wit: Harry Maginnis;
Mary Ellen, who married John Connor and died before Esther,
leaving two children; Esther Maginnis, and Clara, who mar-
ried Michael J. Ryon. Mrs. Margaret Maginnis left a house
and lot in Pottsville which she devised to her husband and
the four children in equal parts. The husband refused to take
under her will, and claimed a life estate in the property, which
then went to the children subject to his life estate.

Esther Maginnis died on August 25, 1883, leaving a will
dated July 17, 1883, duly admitted to probate, the disposing
provisions of which were as follows:

" As to such estate, as it has pleased God to entrust me with,
I dispose of the same as follows, viz.:

" Item: I direct that seventy-five dollars be paid to my
uncle Wm. Ford out of my interest in my mother's estate.

" Item: I direct that one hundred dollars be expended in
procuring two tombstones, one to be placed over my beloved
mother's grave, and one to be placed over the grave of my
beloved niece, Clara Ryon, out of said interest.

" Item: I give and bequeath unto Father Gallagher, my
spiritual adviser, the sum of fifty dollars.

" Item: I give and bequeath unto my brother, Henry Ma-
ginnis, the sum of fifty dollars, out of said interest.

" Item: As to the remainder of my interest in the estate
of my beloved mother, I direct that, after deducting funeral
expenses and all other lawful debts, it shall be disposed of as
follows, viz.: If said estate is sold before the death of my be-
loved father, then one half of said remainder shall be paid to
him absolutely, and the remaining half shall be given to my
sister, Mrs. Clara Ryon, or her heirs or assigns."

The father died in 1884, and afterward partition proceedings
were instituted which resulted in a sale of the house and lot
in Pottsville. The share of the proceeds, which formed the

entire estate of Esther Maginnis, amounted to $1,301, out of which was paid the legacies given in her will and the costs and expenses of settling her estate, leaving a net residue of $841.36, for distribution by the auditor.

Upon the foregoing facts the auditor made the following report:

Clara Ryon, through her counsel, claimed that she was entitled to recover the whole balance for distribution, because John Maginnis having died before the sale, the legacy lapsed, and that as Mrs. Ryon therefore remained the sole legatee under the clause of the will, she was entitled to the whole fund. It was claimed in her behalf that the intention was manifest from the will, that Harry Maginnis, testatrix's brother, should receive no other share of the decedent's estate, than that bequeathed to him, and that the Connor family were to be excluded altogether.

On the other hand Mr. Connor, guardian, and Harry Maginnis claimed to participate in the whole fund.

A careful reading and consideration of the will convinces your auditor that the testatrix intended to dispose of her entire estate; and he is fully convinced that, under the contingency that has arisen, she failed to do so as to the portion of the estate that was to go to John Maginnis, if the real estate was sold during his lifetime, and that as to this portion she died intestate. It may therefore be admitted that the testatrix did intend to dispose of her entire estate. Indeed, the whole tenor and scheme of the will indicates clearly that intention. In fact, she carried out that intention fully in the will, subject to a certain contingency: the sale of her property during her father's lifetime, which, not having happened, the legacy lapsed.

To whom did it lapse? To the other legatees? Not at all. If so it would go to them all alike in equal portions, thus including persons not related by blood or marriage. It could not be held to lapse to Mrs. Ryon, a sister, and not to Harry Maginnis, a brother, in the absence of provisions to that effect. It is undoubtedly true the legacy did lapse, but it lapsed to the estate. While admitting that testatrix intended to dispose of her entire estate, it is clear she failed in carrying out or

expressing such intention in language, under the contingency that subsequently arose. The question therefore is not one of intention, but one of fact. Nothing whatever is expressly said in the will, or can be legally implied, as to what disposition should be made of the portion bequeathed to testatrix's father in case the property was not sold during his lifetime, and hence your auditor holds she died intestate as to that portion of the estate, and will make distribution accordingly.

The auditor then reported a distribution in accordance with his opinion, giving one half of the fund to Clara Ryon, as legatee, and one third of the other half to each of the three heirs of testatrix, as in an intestacy. Thereupon, exceptions were filed on behalf of both Clara Ryon and the Connor children.

Said exceptions having been argued, the court, GREEN, J., filed an opinion, which after quoting the will of Esther Maginnis, proceeded:

The father died before her estate was sold. The estate having been sold after his death, the question arises, how shall the estate be distributed? Is there sufficient in the will to govern the distribution? or must the fund be distributed according to the intestate laws of the commonwealth?

The auditor comes to the conclusion that, the father having died before the sale, the legacy to him lapsed; and that his share must be distributed according to the intestate laws. But he also comes to the conclusion that the legacy to Mrs. Clara Ryon did not lapse, and that she is therefore entitled to one half, in addition to her distributive share in the other half as an heir of the decedent. I can see no warrant in coming to such a conclusion from the language of the will. It seems plain that if one legacy lapsed, then the others did also. They must both either stand or fall together. Otherwise from the same language we draw two inconsistent conclusions.

It may be taken for granted that the testator intended to dispose of the whole of her estate, yet it is very clear, from the language of the will, that she has only done so in a certain contingency. The grammatical construction leaves this in no doubt. The will does not provide for the distribution of her estate in the event of a sale after her father's death, and I think

Arguments

the whole of the remainder must be distributed under the intestate laws.   It is a mere guess to say that the decedent intended that Mrs. Clara Ryon should at all events have the one half, or that she should have the whole of it, as is contended for by her counsel.   The words of the will do not show that such was the intention of the decedent.

The distribution reported by the auditor was therefore corrected in accordance with the foregoing opinion, and the entire fund divided into three equal shares, one to each of the heirs at law of the testatrix.

Thereupon Clara Ryon took this appeal, assigning the distribution ordered as error.

*Mr. A. W. Schalck,* for the appellant:

1. All the circumstances surrounding a testator, his family, amount and character of his property, etc., may and ought to be taken into consideration in giving a construction to his will. First find out the general intent, and then as far as the language will permit, interpret particular expressions accordingly. Every sentence and word must be considered, and the intention of the testator drawn from the words of a will taken altogether must govern: 3 Jarman on Wills, 5th Am. ed., 705 ; 2 Williams on Executors, 4th Am. ed., 925, 927, 931, 932; Postlethwaite's App., 68 Pa. 480 ; Board of Missions' App., 91 Pa. 515 ; Schott's Est., 78 Pa. 42 ; Ferry's App., 102 Pa. 207 ; Raudenbach's App., 87 Pa. 54 ; Hofius v. Hofius, 92 Pa. 307.

2. To render the whole will, and every part of it, effective, we must construe the doubtful phrase in subordination to the original residuary bequest.   This clearly and unequivocally disposes of the whole of the estate of the testatrix, unless it had been sold before the death of the father, in which event the father would have got half of it; but, he dying before the sale, the whole residue remains Clara Ryon's: Finney's App., 113 Pa. 18 ; Miller's App., 113 Pa. 466.   There is nothing which requires an Orphans' Court to make an unjust decree. It has full power to do equity in all cases.   "The Supreme Court of this commonwealth shall, in all cases of appeal from the definitive sentence or decree of the Orphans' Court, hear and determine the same, as to right and justice may belong:"

§ 4, act of April 14, 1835, P. L. 276; Drennan's App., 118 Pa. 187.

*Mr. J. B. Reilly* (with him *Mr. B. H. O'Hare*), for the appellees:

1. It is true, words may in some cases be supplied to carry out a defectively expressed intent, but not to create another intent when one is distinctly expressed, as here, by the language of the will. They can be supplied only in cases necessary to give effect to the most unquestionable purpose of the testator: Varner's App., 87 Pa. 427. There is no difficulty in the interpretation of this will.

2. The will itself makes no provision for the contingency which has arisen, and it would be but the wildest conjecture to gather from it the intention of the testatrix as to the disposition to be made of her estate in the present emergency. The case, therefore, being one simply of a lapsed legacy, the law prescribes the remedy, to distribute the residue according to the intestate laws: Neff's App., 52 Pa. 326; Yard v. Murray, 86 Pa. 114.

3. Where the meaning of a devise or bequest is uncertain, the law will adhere as closely as possible to the general rules of inheritance. Whoever claims against the law of descent, must show a satisfactory written title: Grim's App., 89 Pa. 333; Hoffner v. Wynkoop, 97 Pa. 130; Fitzwater's App., 94 Pa. 141; Stehman's App., 45 Pa. 398; France's Est., 75 Pa. 220; Minter's App., 40 Pa. 111; Horwitz v. Norris, 60 Pa. 261.

OPINION, MR. JUSTICE CLARK:

This case turns upon the proper and true construction of the last will and testament of Esther Maginnis, deceased. The questions involved arise in the distribution of her estate. The facts are not seriously disputed. We find them stated in the paper books substantially as follows:

The testatrix was a daughter of Mrs. Margaret Maginnis, who died in the year 1868, seised of certain real estate, and leaving to survive her a husband, John Maginnis, and four children, viz.: Harry, Mary Ellen, intermarried with John Connor, Esther, and Clara, intermarried with Michael J. Ryon.

By the will of Margaret Maginnis, the children were entitled to the real estate equally, in fee, subject to the life estate of their father, who claimed as against the will his right as tenant by the curtesy.

At the time of, and for some time prior to, the death of Esther Maginnis, the father, John Maginnis, Esther Maginnis, and Clara Ryon, with her children, constituted the family. Esther died August 25, 1883. By her last will and testament, executed July 17, 1883, she bequeathed to her brother, Harry Maginnis, fifty dollars ($50); and after some other bequests, declared in conclusion as follows: .

" As to the remainder of my interest in the estate of my beloved mother, I direct, that after deducting funeral expenses, and all other lawful debts, it shall be disposed of as follows, viz.: If said estate is sold before the death of my beloved father, then one half of said remainder shall be paid to him, absolutely, and the remaining half shall be given to my sister, Mrs. Clara Ryon, or her heirs or assigns."

John Maginnis died in the summer of 1884, and in the following year the real estate of Margaret Maginnis, deceased, under proceedings in partition, was sold. Esther's interest in the proceeds amounted to $1,301. After paying certain specific legacies, as to which there is no dispute, including the $50 to Harry, and deducting the costs and expenses of administration, the net residue was $841.36, which is the fund for distribution, under the clause of her will which we have quoted.

The appellant's contention is, first, that the testatrix's plain purpose was to dispose of her whole estate; that Clara Ryon was the principal object of her bounty, and was the sole residuary legatee, subject to the proviso that if the real estate was sold whilst her father lived, he should get one half, and Clara the other half; and, second, if this construction cannot be sustained, that she is, in any event, entitled to the one half. The latter was the construction of the will adopted by the auditor.

The appellees contend, however, that the testatrix, Esther Maginnis, only disposed of this residue in a certain contingency; that is to say, if the estate should be sold in the lifetime of her father; and, as that contingency did not happen, the legacies lapsed to the estate, and the fund must be distributed as if the testator had died intestate. The court below, overruling

the auditor, adopted this construction of the will, and the distribution was made accordingly.

The estate of the testatrix consisted wholly of her interest under her mother's will, and it is very plain that her intention was to dispose of the whole. She says : " As to such estate, as it pleased God to entrust me with, I dispose of the same as follows," etc. After making certain specific bequests, she says : " As to the remainder of my interest in the estate of my beloved mother, I direct that after deducting, etc., *it* shall be disposed of as follows," etc. It is a matter of little consequence, of course, what her intention was, if she actually failed to make a full disposition ; but her intention being manifest, in the words of the will, it would be our duty to carry that intention into effect, if the will is reasonably susceptible of a construction consistent with that purpose. Notwithstanding her obvious intention, we think she failed, in a certain contingency, to dispose of that half which her father was to have, if the sale was effected in his lifetime ; but we are inclined to agree with the auditor as to the other half. If the estate should be sold before the death of her father, she directs that one half of the remainder be *paid* to her father, whilst the remaining half of the remainder of her estate she directs shall be *given* to her sister. The terms employed in this clause of the will, in view of all the circumstances, may well give rise to doubt as to the testatrix's meaning. Her father had a life estate in the property, and if it should be sold in his lifetime, she may have supposed it proper, as well as just, that some provision should be made for him, but no such reason applied in the case of her sister Clara. The question is, whether the contingency expressed in the beginning of this clause applies to the father's legacy alone, or was intended to extend to the devise or bequest to her sister. The provision for her father is clearly conditioned upon a sale of the land in his lifetime, for his half is to be *paid* to him ; but Clara's half of the remainder of her estate is to be *given* to her, which is consistent with the idea that she was to have her half whether a sale was made or not.

In the construction of a will the law, in doubtful cases, leans in favor of an absolute rather than a defeasible estate ; of a vested rather than a contingent one ; especially when the contingency is an arbitrary one, tending to produce intestacy against the obvious purpose of the testator.

It may be, as the appellant contends, that the testatrix intended, in the event of her father's death before a sale, her sister Clara should have the whole, but she has not so provided; and that this was her intention is urged in vain, in the absence of anything in the will to give it effect. It must be conceded that this case is not free from doubt; we are of opinion, however, that we have given effect to the true intention of the testatrix, as it is expressed in her will.

> The decree of the Orphans' Court is therefore reversed, and the report of the auditor confirmed; the appellees to pay the costs of this appeal.