(Decided April 1st, 1898).

---

## GEORGE BROWN *vs.* THE MERCANTILE TRUST AND DEPOSIT COMPANY, Trustee, &c., et al.

*Voluntary Settlement of Property in Trust for Grantor and Others— Absence of Power of Revocation—Undue Influence—Confidential Relation—Principal and Agent—Testamentary Disposition.*

A voluntary settlement of property in trust for the benefit of the party making the settlement, for life with remainder to others, is not invalid because no power of revocation is reserved therein.

When it is sought to vacate such a settlement of property the question is whether it was the free and unconstrained act of the party making

it, and the fact that no power of revocation was reserved is only one circumstance to be considered in connection with others in the determination of that question.

A deed of trust by which the grantor reserves an equitable interest in the income of the property for life with remainder to others, after his death, is not a testamentary paper.

The rule is that the relation of principal and agent is confidential and that when a gift or other benefit is obtained by the agent and it is afterwards alleged by the principal to have been obtained by the exercise of undue influence, then the burden of proof is upon the agent to show the *bona fides* of the transaction.

But this rule is not applicable when an agent is employed only for one or two special purposes and the contract or benefit in question relates to other matters.

When a trust company has been occasionally employed by a party to sell securities for him and the securities have been for a time in the joint custody of that party and the company, there is no such confidential relation between them as will call for the application of the above mentioned rule to a conveyance of property to the trust company for the benefit of the grantor and others.

Where a principal conveys property to his agent, a trust company, in trust to collect and pay the income to the principal for life, the company to receive a small commission on the net income, there is no such benefit received by the agent at the expense of the principal as will create a presumption against the validity of the transaction.

A man of full age and intelligence, but without business experience, for the purpose of guarding against his own improvidence, executed an absolute deed of trust, by which a large part of his fortune was conveyed to the trustee to collect the income, &c., and pay the same to the grantor for life, and after his death to pay one-third of the income to the grantor's wife and two-thirds to the grantor's children until the youngest arrived at age, when the estate was to be divided between them. It was also provided that during the life of the grantor changes in the investments could be made by the trustee only with the assent of the grantor and that quarterly accounts of the trust should be rendered. The deed contained no power of revocation. Subsequently the grantor filed a bill to set aside the conveyance, alleging that when he executed the same he thought he would have the power to revoke at pleasure the disposition so made, and that the deed was in the nature of a testamentary paper. *Held,*

1. That there was no sufficient evidence that the grantor executed the deed in ignorance of its provisions, since it had been in his possession for two days before he signed it, and he had suggested the making of certain alterations.

2. That the absence of the power of revocation in the deed not only did not raise any presumption against the same, but such a power would have been inconsistent with the objects of the trust.

3. That the deed was not in its nature testamentary and revocable as such.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), dismissing the bill of complaint.

The cause was argued before MCSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (March 1, 1898).

*Wm. Pinkney Whyte*, for the appellant.

The grounds upon which the appellant contends, that the declaration of trust should be set aside and the securities restored to him are, briefly, stated to be as follows:   1. That the confidential relations existing between the appellant and appellee being that of principal and agent, rendered the declaration of trust *prima facie* void.   2. That such being the relation between the parties, the declaration of trust is *prima facie* void, and the appellee is bound to show "to the full satisfaction of the Court that it was the free, unbiased act" of the appellant, and that he "voluntarily and deliberately performed the act, *knowing its nature and effect.*" x 3. That the appellant executed the paper under an entire misapprehension of its provisions, and under the belief that he had the right at any time to revoke it.   4. That the absence of the power of revocation is fatal to its validity under the circumstances.   5. That the paper is, in its nature, a testamentary disposition of his personal property, which he is at liberty to revoke at any time during his life.

It is manifest that the appellant labored under the misapprehension, when assenting to the declaration of trust, that it contained a provision for its revocation.   In the absence of anything to show an intention to make the settlement irrevocable and the omission of a power of revocation is *prima facie* evidence of mistake.   *Guernsey* v. *Murray*, 24 N. J. 243; *Aylesmith* v. *Whitcomb*, 12 R. I. 298; *Russell's Appeal*, 75 Pa. 269.   In such case the burden of proof is on the trustee.   *Rick's Appeal*, 105 Pa. 528.   The power of

revocation will be presumed to be reserved in case of a deed of trust constituting a gift, in the absence of proof of intention to make it irrevocable. (1892.) *Ewing* v. *Wilson*, 132 Ind. 223.

The absence of a power of revocation is fatal to the validity of the declaration of trust under the circumstances. In *Toker* v. *Toker*, 3 De G. G. & S. 491, LORD JUSTICE TURNER said : " The absence of a power of revocation is, I think, a circumstance to be taken into account in determining such cases as these, and it is a circumstance of more or less weight according to the facts of each particular case." And, whatever may be said, when we consider, *Huguenin* v. *Basely*, 14 Vesey, 273, a case always followed in Maryland, it is difficult not to see that LORD ELDON's opinion was, that if a power of revocation was not inserted in a voluntary deed, the defendant is called on to explain the reason. No such explanation has been given or attempted to be given.

The trust is in its nature testamentary and revocable. The delivery of the stocks and bonds, as shown by the declaration of trust, was for the sole benefit of the plaintiff and was clearly intended to serve only his convenience. That a provision is therein contained, which indicates how he wished the property disposed of after his death, carries no weight with it, as relates to the purposes of the trust, and could only have effect upon his death. In this it partakes of the nature of a will and was, therefore, revocable. *Frederick's Appeal*, 52 Pa. 238; *Turner* v. *Scott*, 51 Pa. 126 ; *Gingrich's Appeal*, 17 At. Rep. 33 ; *Rick's Appeal*, 105 Pa. 528. In *Rick's Appeal*, 105 Pa. 528, the Court, speaking of *Frederick's Appeal, supra,* said : " It was held that the instrument was, in effect, a mere power of attorney—an instrument of agency and revocable at pleasure ; that the trustees were to account to him for all they did under the powers vested in them, and that no beneficial interest was to vest in his children until after death." All these cases establish the rule that a purely voluntary conveyance, in-

tended to promote the interests of the grantor, and passing
no present interest to others, may be revoked at will. In
such a deed provision for the benefit of third persons, to
take effect after the grantor's death, are testamentary in
character, and, therefore, revocable. .. *Frederick's Appeal,* 52
Pa. 338 ; *Gingrich's Appeal,* 17 At. Rep. 33 ; *Rick's Appeal,*
105 Pa. 528. The intention of the maker, as to the char-
acter of the estate, and as to the time when it is to take
effect, wholly irrespective of the form of the instrument, is
to be looked to in determining whether the paper is a deed
or a will. If the instrument has no effect, as to third par-
ties, until death, and that is, upon the whole, the intention
of the maker, it is a will and revocable. *Hester* v. *Young,*
2 Kelly, 46.

It is respectfully denied that the case of the *Mayor and
City Council of Baltimore,* 6 Md. 257, relied on by the Court
below, as an express authority on this point, should be so
considered. All that this case decides is that a deed carries
the legal estate, while the will is but a declaration of uses.
Besides, what was said on that point was a mere dictum,
and not necessary to the determination of the case. The
case of *Worthington* v. *Rief, Trustee,* in 77 Md. 267, con-
tains expressions in the opinion strongly suggestive that the
ground taken in the case now under consideration is surely
tenable.

*Frank Gosnell,* for the guardian *ad litem* of infant ap-
pellees.

A review of the authorities, both American and English,
will clearly show that the deed as it stands is proper, and is
entirely consistent with the evidence of Mr. Gill as to the
manner and circumstances under which it was executed.
In fact, had it contained a power of revocation, the cere-
mony then performed would have been futile. In *Petre* v.
*Espinasse,* 2 M. & K. 496, an extravagant spendthrift, to
protect himself from the consequences of improvidence, ex-
ecuted a voluntary deed for the benefit of his future chil-

dren, which deed he afterwards sought to vacate. The
Master of the Rolls said : " It is plain that a person can-
not himself recall a voluntary deed which he has executed
for the benefit of his children ; and I know no reason why,
for the benefit of those children, he may not submit to the
discretion of a third person the extent of the enjoyment of
the income of his property ; the bill must, therefore, be dis-
missed with costs." *Bill* v. *Cureton* (the next case in the same
volume), was where a woman, not at the time contemplat-·
ing marriage, transferred a sum of stock to trustees to pay
to herself the income until she married, after her marriage
to her separate use for life, and after her decease to pay the
sum to her husband for life or until his bankruptcy, and
thereafter in trust for the children of the settlor, and in de-
fault of such remainder over, it was held by the Master of
the Rolls, that the conveyance was irrevocable and could not
be vacated.    In *Toker* v. *Toker*, 3 De G. J. & S. 487, LORD
JUSTICE TURNER says, " But it would be a most unwarrant-
able interference with the rights of property to hold that
no voluntary settlement    *    *    *    could be valid unless
a power of revocation was inserted in it.    I find no such
position in the case of *Huguenin* v. *Basely*, which was re-
ferred to in support of the argument ; that, as I understand
it, goes no farther than the absence of a power of revoca-
tion may be evidence that the party did not understand the
transaction ; so of undue influence.    But whether it would
be so or not would of course depend upon all the circum-
stances of the case ; and here the circumstances seem to me
to account for the power not being·inserted ; the object of
that settlement being to render the disposition of the estate
irrevocable, which if left to depend upon the will which this
lady had previously made, would have been revocable.
*    *    *    Again, I think it is going too far to say that no
voluntary settlement can be valid unless the settlor is ad-
vised that there should be a power of revocation inserted in
it.    What the Court has to be satisfied of in these cases, as
I apprehend, is that the settlement, whether containing or

not a power of revocation, is the free, determined act of the party making it ; and the absence of advice as to the insertion of a power of revocation is a circumstance ; a circumstance merely to be weighed in connection with the other circumstances of the case."

In *Henry* v. *Armstrong*, 18 Chancery Division, 668, the plaintiff, who was married in 1865, had property to the amount of 13,000 pounds sterling a year ; and being about to go into business on the Stock Exchange, on the 7th of August, 1872, executed a deed conveying specific real estate and personal estate (being in fact, all his property except about 1,000 pounds sterling) to two trustees in trust for the separate use of his wife for life with remainder to his children and their issue.   On the 7th of February, 1880, the settlor brought his action alleging that he had executed the deed in ignorance of its true purport and effect, and praying to have it set aside.   Justice Kay said in his opinion, " I have no hesitation in dismissing this action with costs.   No doubt there are to be found in reported cases *dicta* to the effect that the *onus* of supporting a voluntary deed rests on those who set it up, but I do not think that these *dicta* should go so far as to say that whenever a voluntary settlement is impeached on any ground whatever the *onus* is at once thrown on those who would maintain it.   As I understand it, the law is that anybody *of age and sound mind*, who has executed a voluntary deed by which he has divested himself of his own property, is bound by his own act, and if he himself comes to have the deed set aside—especially if he comes a long time afterwards—he must prove some substantial reason why the deed should be set aside."

*Phillips* v. *Mullings*, L. R., 7 Ch. 244, was a case where a young man *of improvident habits*, being entitled to a sum of money, was induced by the trustee of the money, and by the solicitor, to execute a settlement by which he assigned a part of the money to trustees in trust, to invest and pay to him during his life the income on such part thereof as they should see fit, and after his death *in trust to hold the*

*same for his wife and children*, if any, and subject thereto
on trust for certain cousins of his.    He had no power of
appointment in default of issue *and no power of revocation*,
and no power to appoint new trustees.    The Lord Chan-
cellor said :    " It is clear, for instance, that any one taking
any advantage under the voluntary deed and setting it up
against the donor, must show that he thoroughly knew
what he was doing, or at all events, was protected by inde-
pendent advice.    *    *    *    But whether there should be a
power of revocation or not, must depend upon the circum-
stances, and it cannot be laid down as a general rule that
such a deed would be voidable unless it contained a power
of revocation.    *    *    *    As to a power of revocation, it
seems to me that had such a power been inserted, the
young man's money would merely have been wasted, and
that no one but the solicitor would have derived any benefit
from the deed.    *    *    *    All that the law requires in a deed
of this description is that it should be effective, and should
not contain extraordinary clauses, unless those clauses
are shown plainly and distinctly to have been brought to
the notice of the settlor and to have been understood by
him."    See also *Hall* v. *Hall*, L. R. 8 Ch. 430 ; *Hildreth*
v. *Elliott*, 8 Pick. 293 ; *Vinney* v. *Abbott*, 109 Mass. 300 ;
*Sewell* v. *Roberts*, 115 Mass. 273.

Some of the Pennsylvania cases, notably those cited by
appellant in the Circuit Court (*Turner* v. *Scott*, 51 Pa. St.
126 ; *Frederick's Appeal*, 52 Id. 338 ; *Rick's Appeal*, 105
Id. 538 ; and *Appeal of Gingrich*, 17 Atl. Rep. 33), do de-
cide that voluntary deeds, *where no present interest passes*,
are testamentary in their character, and may be revoked by
the settlor at his pleasure, but, upon examination, it will be
found that there was some element of fraud or imposition
connected with their execution, in addition to the omission
of a power of revocation.

In the case at bar the transaction was *completed* by the
delivery to the trustee of the stocks and bonds, and by the
execution in duplicate of the "Declaration of Trust."

Thus the possession and title were put out of Mr. Brown,. and a *present interest* was vested in the trustee.   All interest on and dominion and control over the property, excepting the equitable life estate reserved to himself, having been irrevocably surrendered.

*Arthur Geo. Brown,* for the Mercantile Trust and Dep. Co., appellee.

The appellant alleges that he supposed the trust was "revocable" and upon that ground his learned counsel chiefly relies.   1. For a man in Mr. Brown's situation, with his responsibilities, to have intended to make or to have made a trust revocable at his pleasure, would have been, with all due respect, absurd; and, as the event has shown, futile. 2. It is respectfully submitted that the true rule on this subject, as defined by LORD JUSTICE TURNER in *Toker* v. *Toker,* 3 De Gex, Jones & Smith, 487, 491, often referred to and adopted in Maryland, is simply that the absence of a power of revocation is a circumstance to be taken into account, and is of more or less weight, according to the facts of each particular case.   The facts of this case not only deprive it of any weight at all, but preponderate overwhelmingly on the other side of the balance.   3. In certain exceptional cases, especially those of young women, on the threshold of life, who have tied up their property, without reserving any control or power of revocation, the Courts have yielded to applications to set deeds aside; but this appellee suggests that by no ingenuity can an analogy be established between such cases and one like this, where the head of a large family, in middle life, has the duty of making some provision which may suffice to keep from want those who are dependent upon him.

Appellant's counsel also contended that the instrument is testamentary in its character, and therefore revocable; and relied especially upon some Pennsylvania cases in support of this and his other contention.   It is submitted that the later Pennsylvania cases are, on these subjects, in har-

mony with our own, and with the authorities elsewhere. For example, in *Russell's Appeal*, 75 Pa. St. 269, the Court found that a contingency not provided for had happened ; the husband was dead, and there were no children. The gist of that case is contained in the short note, " Where the facts show that the deed was executed without advice or reflection or intention to bind after the reasons for executing it have passed, and the party is again *sui juris*, equity will relieve against volunteers claiming without consideration or a reasonable motive for continuing the donor's disability." Another of appellant's authorities was *Rick's Appeal*, 105 Pa. St. 528, which was the case of a woman advanced in life, who could neither read nor write, and who had been misled. But even in that case the Court was careful to say, p. 536 : " It is certain that *Frederick's Appeal* (2 P. F. Smith, 338), was intended to create an exception to the general rule that an instrument which conveys an estate *in presenti*, to a trustee and is intended to take effect upon its delivery, even though the grantor is the only beneficiary during his life, cannot be considered testamentary or revocable. The later decisions carefully distinguish those cases where a present beneficial interest is given to third persons. Thus in *Ritter's Appeal*, 9 P. F. S. 9, *Frederick's Appeal* was held not to apply for the reason that a present interest was vested in the wife. The same distinction was observed in *Fellow's Appeal*, 12 Norris, 470." In *Fellow's Appeal*, 93 Pa. St. 470, the Court said, " The trust was accepted and acted upon by the appellee. The title of a trustee under a deed of trust is complete and irrevocable by the settlor, although the transaction be purely voluntary. *Hill on Trustees*, 82. Nor does the fact that the grantor reserved an interest during life in the proceeds of the property, and gave a future benefit to other persons named, give an implied right of revocation. *Reese et al.* v. *Ruth*, 13 S. & R. 434 ; *Eckman* v. *Eckman*, 18 P. F. Smith, 460."

The deed of trust is clear and definite, and fully explains and speaks for itself. It cannot be altered or diminished.

All of the testimony by which Mr. Brown seeks to qualify or impeach it was excepted to ; and, if admissible, is neither definite nor adequate.

PAGE, J., delivered the opinion of the Court.

This proceeding was instituted to set aside a declaration of trust made by the appellant to the Mercantile Trust and Deposit Company of Baltimore (referred to hereinafter as " The Trust Company.")

The complainant alleges in the bill that he inherited a considerable fortune from his father, the late George Brown, and being utterly unacquainted with business affairs, but anxious to have certain parts of his personal estate placed in the hands of some corporation who would manage the same profitably for him, but also believing that any such arrangement as he contemplated making would be subject to revocation, and being then possessed of stocks and securities aggregating in value the sum of $140.000, delivered the same on the 29th of June, 1894, to the Trust Company ; that said delivery was made for his personal use and convenience, and was understood by him to continue and be of force only so long as he might consider it desirable, and it remained unrevoked, but not to be permanently binding on him, and such was his belief at the time of making such delivery ; that the Trust Company desiring to make declaration of the purpose of such delivery of the stocks and securities, which had been purely voluntary and without consideration, executed of its own volition the declaration of trust ; a copy of which was filed with the bill : that by the terms of the said declaration, the entire income, less compensation to the trustee, is to be paid over to the complainant during his life ; and no present interest passed to others until his death ; that such declaration is entirely testamentary and can be annulled and set aside by a Court of Equity ; " that the delivery of the stocks and securities were delivered to the Trust Company at a time when he believed that he had sufficient income to pay all his obligations and support his family, but

that owing to the failure of some of the corporations in which he had investments to pay their accustomed dividends, he became embarrassed " and therefore now desires to have the said trust dissolved and set aside ; that he has informed the Trust Company that he has revoked the trust, but it declines to return to him the stocks, etc., unless so directed by the Court ; and he therefore prays that the said stocks and securities may be decreed to belong absolutely to him, and that the Trust Company may be ordered to " deliver, reassign and transfer " them to him.

The declaration of trust referred to in the bill bears date the 29th of June, 1894. It declares that, whereas George Brown " hath at the execution of these presents," delivered to the Trust Company certain stocks, bonds and securities (which are specifically set out and described in the paper) ; and inasmuch as the title to said stocks, etc., passed by the delivery, it was deemed important that some permanent record should be preserved of the terms upon which said transfers were made, and the duties assumed and the trust to be performed by said corporation in respect thereto, etc. The Trust Company is to take charge of and keep the stocks, etc., and to collect the income and profits thereof, and after deductions of lawful and necessary expenses of the administration (including as compensation for its services as trustee a commission of three per cent. on said income, and no charge for reinvestment) to pay over as collected to the appellant, the whole net income during his life ; and from and after his death, one-third of said income to his widow, and to divide the remaining two-thirds thereof among his childred living at the time of his death (the child or children of any deceased child to take the share its or their parent would have been entitled to if living), until the youngest of said children shall arrive at the age of twenty-one years, when said trustee is to divide two-thirds of the *corpus* of the estate equally among them, share and share alike (the child or children of any deceased child to take the share its or their parent would have been entitled to if living). Upon

the death of the widow, the one-third of the *corpus* held for
her to be divided in like manner.  In case his wife did not sur-
vive him, the whole income to be equally divided among
his children and the *corpus* in like manner when the youngest
child attains the age of twenty-one years.  The Trust Com-
pany is given power without the orders of any Court to
make changes of investment "at its discretion," and to make
sales and transfers as often as it deems best, for this purpose
or for any other purpose, without any obligations upon pur-
chasers to see to the application of the purchase money,
with power to reinstate the proceeds of sale in any secutities,
real or personal, and without any accountability for losses,
"save from the gross negligence of any one or more of its ser-
vants or officers."  But changes in investments and sale are
to be made during the life of the said George Brown, "only
with his assent, to be evidenced by a memorandum in writ-
ing."  The trustee is to render quarterly accounts of the
trust during the life of George Brown, and such other
as he may at any time require, and upon the expiration of the
trust the trustee is to be entitled to a commission of two
and a-half per cent. in distribution of the principal.

All the adult appellee defendants have answered admitt-
ing the facts set forth in the bill ; except the Trust Com-
pany, which, after admitting the delivery of the securities
and the making of the declaration of trust, and the attempt
of the complainant to revoke the trust, and its refusal to
comply with the demand to return the property, avers that
it accepted the stocks and securities and executed the said
declaration in good faith and believes it to be its duty to
decline to comply with the demand of the complainant, but
being a mere trustee, submits itself to such decree as the
Court shall deem proper to pass.

It will be observed there is no charge made in the bill,
and, as will appear hereafter, none was set up in the proof,
that the appellant had had any actual fraud or imposition
practised upon him in the procurement of the paper.   The
grounds upon which it is contended that the declaration of

trust should be set aside, are stated by the counsel for the appellant in the brief filed by him, as follows :

1st. That confidential relations existing between the appellant and appellee, being that of principal and agent, rendered the declaration of trust *prima facie* void.

2nd. The appellee is therefore bound to show " to the full satisfaction of the Court, that it was the free, unbiassed act " of the appellant, and that he " voluntarily and deliberately performed the act knowing its nature and effect."

3rd. That the appellant executed the paper under an entire misapprehension of the provisions, and under the belief that he had the right at any time to revoke it.

4th. That the absence of the power of revocation is fatal to its validity, under the circumstances.

5th. That the paper is in its nature a testamentary disposition of his personal property, which he is at liberty to revoke at any time during his life.

It may be seriously questioned whether the facts of this case bring it within the well-established rule, applicable to cases where a gift or conveyance of property is made to one standing in a confidential or fiduciary relation to the donor.    That rule is designed in some degree as a protection to the parties against the effects of overweening confidence and self delusion, and the infirmities of hasty and precipitate judgment.    1 *Story Eq. Jur.* 307.    Where such relations do exist, and a benefit is obtained, the burden is on the donee to establish to the full satisfaction of the Court that the deed or instrument was the free, unbiassed act of the donor.    But it is sometimes difficult to lay down with precision what is meant by the expression " confidential relations " or " relations in which dominion may be exercised by one person over another."    *Cook* v. *Lamotte*, 15 Beav. 299, cited in *Whitridge* v. *Whitridge*, 76 Md. 73.    Such a relation will undoubtedly be presumed in certain cases ; as for instance, in that of a guardian and ward, parent and child, attorney and client, and also in that of principal and agent, and may exist in many other situations.

· But it will not and cannot reasonably be presumed that the mere fact of the relation of principal and agent for limited or special purposes, necessarily raises a controlling presumption of undue influence on the part of the agent over the principal, particularly in matters outside of the special purposes for which the agent has been employed. Whether such close and confidential relations existed between the parties so situated as to enable the one to dominate and control the other would be a question of fact dependent upon the circumstances of each case. *Cowee* v. *Cornell et al.,* 75 N. Y. 100. In *Brooke* v. *Berry,* 2 Gill, 83, and in *Todd* v. *Grove,* 33 Md. 191, the agency extended to the transaction of all the business, and the management of all the affairs of the principal, and this being so, when the gift was obtained, it was held that the facts brought these cases clearly within the rule of equity governing transactions between parties standing in a confidential relation. But in *Eakle* v. *Reynolds,* 54 Md. 305, where the proof showed that the donee had "occasionally transacted business for the donor and that he had during the last sickness of the donor, who was his uncle, the general management of the farm, under the general directions of the donor, it was held that the facts did not show that the relations of the parties were such as to imply dominion or control either over the property or person of the donor." Now the sole proof upon which it is contended here that such confidential relations existed between the appellant and the Trust Company, is the evidence of Mr. Gill, the president of the Trust Company, to the effect that Mr. Brown " had employed us (the company) to sell securities for him " and that the stocks, etc., were under " our joint custody in the Trust Company." Now it would be going very far to assume that because Mr. Brown had availed himself of the security furnished by the vaults of the Trust Company (whose business was partly that of a safe deposit company) to protect and keep his property ; and (when a change of investment became necessary) had selected the company to

make sale of such of his securities as he wished to dispose of, that a relation of confidence therefore existed between the parties, so close as reasonably to imply that the company possessed power to dominate his judgment and actions.    And apart from .this, can it be successfully contended that the grantee received such a benefit as ought to bring the case within the rule ?

Under the declaration of trust the company gets a benefit of three per cent. commission on the net income, and in the final distribution two and one-half per cent. on the principal.    In no case we have been referred to has it been held that a provision for reasonable commissions was a benefit conferred by the grant such as will bring the case within the doctrine, applicable to parties standing in confidential relations.    JUDGE MILLER, with the concurrence of JUDGE ROBINSON, in his opinion in *Williams* v. *Williams*, said the · law regards such commissions as compensations for services rendered, and not as a benefit granted by the deed.    63 Md. 409.    This was part of a dissenting opinion, it is true, but there is nothing in the opinion of the Court in conflict with it, and the utterance of so able and experienced a Judge, concurred in as it was by the late CHIEF JUDGE ROBINSON, is undoubtedly entitled to great consideration.

Moreover, in *Todd* v. *Grove*, 33 Md. 193, in the opinion adopted by this Court, the words of SIR G. J. TURNER, delivered in *Rhodes* v. *Bate* (1 Chancery App., 256), were cited approvingly as follows :    "As to the nature of the benefit, the injury to the party by whom the benefit is conferred, cannot depend upon its nature.    This general principle, however, must, as it seems to me, admit of some limitation, It cannot, I think, reasonably be said, that a mere trifling gift to a person standing in a confidential relation, or a mere trifling liability incurred in favor of such a person, ought to stand in the same position as a gift of a man's whole property or a liability involving it would stand in."

But, however this may be, we will now examine the case on its merits, as disclosed by the proof.    There is no suffi-

cient evidence in the case, in our opinion, that the appellant
executed the paper under a misapprehension of its provisions.
The appellant states that he thought he could revoke it;
but it is apparently with care that he abstains from affirming
that he understood there was such a power reserved to him
in the paper, in terms.   He further states that he signed the
declaration, but never read over " that part of it about the
children." Mr. Gill, on the other hand, says, " he read
the paper and said he could not sign it without conferring
with his lawyer," that " he left the office with the deed in
his pocket," and, a day or two later, returned " to have
some alterations made," which were accordingly made.
Except as to reading the paper this testimony of Mr. Gill
is wholly uncontradicted.   It is not claimed that Mr. Brown
is incapable of attending to business, and if he be not, it is
inconceivable that he should retain such an important paper
in his possession for " a day or two " without reading it, and
knowing all its contents.

But is contended, the declaration of trust is invalid be-
cause it contains no power of revocation.   The ancient doc-
trine was, that a voluntary settlement made without fraud
was binding on the settlor, although the settlor had not re-
served a power of revocation.   In *Bill* v. *Cureton*, 2 Mylne
& Keen, 510 (decided in 1835), it was stated that this doc-
trine had then never been disputed, and had been the sub-
ject of repeated decisions from the cases of *Villers* v. *Beau-
mont* (1 Vernon, 100), in the year 1682, and of *Brookbank*
v. *Brookbank* (1 Eq. Ca. Abr. 168), in 1691, down to the
modern cases of *Ellison* v. *Ellison*, 6 Ves. 656 ; and *Pulver-
toft* v. *Pulvertoft*, 18 Ves. 84 ; *Petre* v. *Espenasse*, 2 Mylne
& Keen, 502.   This doctrine has been much relaxed by
the modern decisions, and the rule now seems to be, the
one stated by LORD JUSTICE TURNER, in *Toker* v. *Toker*, 3
De. G. J. & S. 491 : " That the absence of a power of rev-
ocation may be evidence that the party did not understand
the transaction and so of undue influence.   But whether it
would be so or not, would depend . upon all the circum-

stances of the case   *   *   *.   Again I think it is going
too far to say that no voluntary settlement can be valid un-
less the settlor is advised there should be a power of revo-
cation inserted in it.   What the Court has to be satisfied of
in these cases, I apprehend, is that the settlement, whether
containing or not containing a power of revocation, is the
free determined act of the party making it ; and the absence
of advice as to the insertion of a power of revocation, is a
circumstance and a circumstance merely, to be weighed in
connection with the other circumstances of the case." This
case was cited approvingly by this Court in *Whitridge* v.
*Whitridge*, 76 Md. 83, also the case of *Huguenin* v. *Basely*,
14 Ves. 273, where the same doctrine is announced. *Henry*
v. *Armstrong*, 18 Ch. Div. 558 ; *Phillips* v. *Mullings*, L. R.
7 Ch. App. 244 ; *Hall* v. *Hall*, L. R., 8 Ch. Ap. 430 ;
*Viney* v. *Abbott*, 109 Mass. 300 ; *Russell's Appeal*, 75 Pa.
St. 288.   See also *Goodwin* v. *White*, 59 Md. 509.   The
cases cited by the counsel for the appellant are not in con-
flict with these principles.   In *Rick's Appeal*, 105 Pa. St.
536, the Court say, "There is a line of English cases
which hold that in the absence of any motive for an irrevo-
cable gift it is unreasonable that a voluntary conveyance
should be without a power of revocation   *   *   *   *.
"The absence" (the Court proceeds citing from *Hall* v.
*Hall, supra*), " of a power of revocation in a voluntary deed
not impeached by any undue influence, is of course material,
when it appears that the settlor did not intend to make an
irrevocable settlement or where the settlement is of such a
nature, or was made under such circumstances as to be un-
reasonable and improvident unless guarded by a power of
revocation.   Our own well-considered case of *Russell's Ap-
peal*, 75 Pa. St. 269, sustains the same view.   It was there
said, 'the absence of the power of revocation in the deed
and failure of counsel to advise it, are circumstances, with
others, to show that the act was not done with deliberate
will.'"   To the same effect is *Garusey* v. *Munday*, 24 N. J.
Eq. 246 ; and *Aylsworth* v. *Whitcomb*, 12 R. I. 299.

Now, let us examine the facts of this case as disclosed in the record.

The grantor, George Brown, at the time of the making of the declaration of trust, was forty-seven years of age. There is nothing to show that he is deficient in ordinary intelligence, though it is admitted he has had no business education and is utterly unacquainted with business affairs. He inherited a considerable fortune from his grand-father, and at the time of the making the declaration of trust, he was possessed of one hundred and forty thousand dollars in stocks and securities and also was the owner of the Brooklandwood tract of land in Baltimore County, containing about 1,700 acres, on which he had expended in permanent improvements and betterments about thirty thousand dollars, ($30,000). A considerable portion must have been owed by him when the declaration was made, for he " was much disturbed about the amount of money he was *spending* for improvements going on at Brooklandwood." He told Mr. Gill he "had already expended a large amount of money and would have to sell more securities." The evidence implies strongly, he had already been compelled to sell part of the securities, and his disturbance clearly arose from the apprehension that the remainder would be lost to him, unless some steps were taken to preserve it. He visited Mr. Gill on several occasions, and it was during one of his visits that Mr. Gill suggested to him to make a deed of trust of the *remainder* of his personal property, " that thereby he would save a considerable sum of money for his children."

" He said it was his desire to make this deed of trust." There is nothing in the record, but what we have thus stated, and the terms of the declaration itself, that indicate the purposes of the declaration of trust, except the very loose and vague statement of Mr. Brown himself, that he put his property in the hands of the company " for his own use."

It is clear that it was made for the purpose of protecting his property from his own improvidence. He was disturbed about his expenditures, and was without the capacity to

abate them.    If he thought only of himself, he was solic-
itous lest he should soon be without other means than his
landed estate.    If his children and wife were in his thoughts,
as Mr. Gill suggested, the deed of trust would enable him
to save "a considerable sum of money" for them.    The
terms of the trust itself bear out this view.    It secures to
Mr. Brown the enjoyment of the income for life, and full
provision is made for his wife and children after his death.
That he intended the trust to continue after his death is
clear from the fact that no change of investment could be
made " during his life without his assent ;"  and further, that
the Trust Company was during his life to render accounts
to him quarterly and at such other times as he should
require ; and if it was so to continue, he could have had no
other purpose than to protect and preserve his property
for the benefit of those who should survive him.    To have
inserted a power of revocation in an instrument like this,
under these circumstances would have been clearly out of
place.    A spendthrift trust revocable at the whim or caprice
of the donor could afford no security whatever ; it would
have been, as counsel said, absurd.    In *Henry* v. *Armstrong*,
*supra*, the plaintiff being about to go into business on the
Stock Exchange, executed a deed of his real and personal
estate in trust, for the separate use of his wife for life, with
remainder to his children or their issue as therein mentioned.
He brought the action to set it aside, on the ground he had
executed the deed in ignorance of its true purport and effect.
KAY, J., said, "As I understand it, the law is that anybody
of full age and sound mind, who has executed a voluntary
deed by which he has denuded himself of his own property
is bound by his own act, and if he himself comes to have
the deed set aside  *  *  *  he must prove some sub-
stantial reason why the deed should be set aside.    Now,
the grounds on which the plaintiff relies in this case are that
he did not fully understand the purport of the deed, and
that it is irrevocable  *  *.    It is very common that a man
should execute such a deed when he goes into business and

the ordinary way is that the deed should be drawn without any power of revocation, because if there is a power of revocation, and he falls into difficulties or becomes bankrupt, the assignment of his property would be practically useless. Such a power would be in this case entirely inconsistent with the objects I am told the plaintiff had in executing the deed.'' For like reasons we are clearly of the opinion, that in view of the appellant's character and unfitness for business of any kind, his inability to care for his own estate, and his past experience in taking care of his affairs, it was eminently wise and prudent that he should take steps to be protected against himself; and we think the clear purpose of the parties in executing the declaration of trust was to do this, and save something after his death for his children.   It could not have been intended that the trust should be revocable at the donor's pleasure, for the reason that a power of revocation, in such an instrument, would have been clearly out of place and wholly inconsistent with the objects of the trust, and would have rendered the act nugatory and worthless.

The appellant further contends, that the trust is in its nature testamentary and revocable.   The declaration of trust sets forth that the stocks, bonds and securities had passed out of the possession of Mr. Brown and had been delivered to the company.   The transaction, therefore, was complete, and all present interest had become vested in the trustee. To sustain his position the counsel for the appellant has cited (mostly from Pennsylvania) the following cases : *Frederick's Appeal*, 52 Pa. St. 328 ; *Turner* v. *Scott*, 51 Pa. St. 126 ; *Gingrick's Appeal*, 17 At. Rep. 23 ; *Rick's Appeal*, 105 Pa. St. 528, and *Hester* v. *Young*, 2 Kelly, 46.   We will briefly examine these cases.   In *Frederick's Appeal* it was held that the act of the donor by the true construction of the deed was a mere power of attorney, that the ''manifest intention of the grantor was to promote his own convenience and protect his own interests, and that the utmost that can be made of it is that it was a mere covenant for posthumous gifts, and as such *nudum pactum*.''

In *Turner* v. *Scott*, decided prior to the last mentioned case, the grantor reserved the possession and use of the land during his life, and provided in express terms that the deed should in no way take effect until after his death. The Court held that "whatever the forms of the instrument, if it vests no present interest, but only appoints what is to be done after the death of the maker, it is a testamentary instrument." In *Rick's Appeal* the Court said, "it is said, however, in the case on hand, a present interest passed to the appellant. This scarcely rises to the dignity of an argument." In *Hester* v. *Young*, the instrument in question provided that no title was to pass until after the death of the donor. These cases, therefore, only decide that voluntary deeds where no present interest passes are testamentary in their character and are revocable at the will of the donor.

But that is not this case; here the present interest did pass, as we stated, to the donee. In such a state of facts the law in Pennsylvania is clear. In *Stocket* v. *Ryan*, 176 Pa. St. 71, decided in 1896, when the deed was made for the purpose of preserving the grantor's estate, for his own benefit during life and of disposing of it among his family, in accordance with his wishes, after his death, the Court said, "Where a deed conveys, as this one does, a present interest for life to the grantee, the fact that it contains provisions to take effect by way of contingent remainders upon the death of the grantor during the life of the grantee, does not convert it into a will or make it testamentary." Such limitations cannot be revoked by the grantor, and to sustain this position a number of Pennsylvania cases are cited, including *Lines* v. *Lines*, 142 Pa. St. 149, and *Mattocks* v. *Brown*, 103 Pa. St. 16.

In Maryland it is clear, that if the obvious purpose of an instrument in any form is not to take place until after the death of the person making it, it shall operate as a will. *Cover* v. *Stem*, 67 Md. 453; *Cary* v. *Dennis*, 13 Md. 17. In *Mayor and C. C.* v. *Williams*, 6 Md. 254, this question arose in the following manner: The plaintiff Williams brought suit

.against the defendant to recover damages assessed in favor of the owner of a city lot, resulting from opening a street. 'The real controversy was between the plaintiff and one Banks.   The plaintiff claimed under a deed from Hannah Kitty Chase by which she conveyed the lot to the plaintiff in trust for the benefit of herself for life, and from and after her death for such uses and trusts as are declared in her last will.   It was contended among other things that the deed was a testamentary paper and had been revoked by Mrs. Chase.   It was so claimed because it limited the estate to the use of the grantor for life, and then in trust for the uses in the will and codicil, which could only take effect beneficially, after the decease of the grantor, as they would by will.   But the Court held that it could not be so regarded. In its opinion, the case of *Thompson* v. *Brown*, 3 Myl. & K. 32, is cited.   There the deed was for the purpose of securing to the grantor dividends of stock, for his own use during his life and disposing of the stock to others after his death ; it also contained a power of revocation ; but it was held not to be a testamentary paper.   In the following cases in Maryland such trusts have been maintained : *Thompson* v. *Ballard*, 70 Md. 10 ; *Latrobe* v. *Carter*, 83 Md. 279 ; *Duffy* v. *Calvert*, 6 Gill, 487.   See also *Bunch* v. *Nicks*, 50 Ark. 367 ; *White* v. *Hopkins*, 80 Ga. 154 ; *Wilson* v. *Carrico*, 140 Ind. 523.

For these reasons the decree must be affirmed.

*Decree affirmed.*

(Decided April 1st, 1898).