FRANCIS M. FELTON, Appellant, v. DAVID W. THOMPSON et al., Appellees.

No. 39701.

NOVEMBER 21, 1929.

*L. R. Boomhower* and *N. Levinson,* for appellant.

*C. H. Van Law,* for appellees.

DE GRAFF, J.—Two questions are presented on this appeal: (1) Did a fiduciary relation exist between plaintiff-appellant and the defendant-appellees? (2) Was the plaintiff-appellant privileged to prove, by parol evidence, his pleaded contemporaneous oral agreement relative to the transaction which involved 120 acres of Cerro Gordo County, Iowa, real estate?

I. We first inquire if the record facts disclose a fiduciary relationship between the parties to this suit. We unhesitatingly answer in the negative. It appears that the appellee David W.  Thompson was a minister of the United Brethren church, and that the appellant Francis M. Felton and wife were members of that denomination. The record discloses that from 1911 to 1913 Mr. Thompson was serving as pastor of the Moravia United Brethren church, and during that period the appellants herein were members of his church. Subsequently thereto, Mr. Thompson became the pastor of several churches of his denomination, but neither the appellant Felton nor any member of his family had membership in such churches. It also appears that no dealings with reference to the transaction in question were had until after an inquiry by Felton was made, in 1918, relative to Thompson's ownership of this land. There was an attempt on the part of the Feltons to impeach Mr. Thompson by reason of the fact, as alleged by the plaintiff, that Mr. Thompson converted a part of the church missionary fund of which he had custody. This fact caused no disturbance, so far as Mr. Thompson was concerned, in his relations to his church. He was in good standing at the time of this trial, and it is not surprising that the trial court gave no weight to this attempted impeachment of Mr. Thompson. In stressing this fact, the trial court, during the taking of testimony, in answer to an argument made by plaintiff's attorney, said:

"There is no principle of law that I know of that would.

permit them [Feltons] to rely on a man merely because he is a minister, or because he asks them to pray. They both believed in prayer, I take it, and they both believed in the Bible; and I don't think there is anything under the facts that they [Feltons] could say that they yielded to him on a representation, that they would not have yielded to him under any circumstances.''

It may be observed that there is no charge of legal fraud, accident, or mistake, and furthermore, there was no pleading asking for a reformation of any contract involved in this case. Clearly, there was no fiduciary relation shown to exist between the parties when the various contracts in question were executed, or for several years prior to the initial contract of purchase. The mere relation of borrower and lender may not be viewed *per se* as confidential or fiduciary. It is difficult to define with precision the term ''confidential or fiduciary relationship.'' What constitutes this relation is a question of fact, dependent upon the circumstances of each case. When a fiduciary relation is established, it is true that equity will scrutinize the transactions between the parties, to correct any advantage taken by the superior over the subordinate; but it will not disturb a transaction accruing to the advantage or best interests of the subordinate, or when it is supported by adequate consideration. *Riddle v. Cutter*, 49 Iowa 547. See, also, *Brown v. Mercantile Tr. & Dep. Co.*, 87 Md. 377 (40 Atl. 256); *Colonial Tr. Co. v. Hoffstot*, 219 Pa. St. 497 (69 Atl. 52); *Cowee v. Cornell*, 75 N. Y. 91.

In the case at bar, it must be recognized that there was an adequate consideration. This is true of the first deed of the land from Thompson to Felton, and also of the second deed of the same land from Felton to Thompson. Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can reasonably be inferred from the terms used. Section 10042, Code, 1927. The trial court was clearly correct in ignoring the claim of the Feltons that a fiduciary relation existed at any time when any written instrument was executed, as between the parties to this action.

II. We will first briefly outline the chronology of the material facts, before making answer to the second question, rela-

tive to the applicability of the parol-evidence rule, as contended by appellant.

It appears that the defendant Thompson became the owner of the 120-acre tract in 1906. Prior to the execution of the deed by Thompson to the appellant Felton, there was a written con-  tract of purchase and sale between these parties; and although this contract was executed in du- plicate, and each party was in possession of the contract when made, at the time of the trial it appears that both the original and the duplicate were lost, and therefore were not in evidence. There is no ques- tion that, pursuant to the contract of purchase, the Thompsons did, on the 1st day of March, 1921, convey by warranty deed to Francis M. Felton (appellant) the 120 acres, and said deed of conveyance was filed for record in the office of the county recorder of Cerro Gordo County, Iowa, on the 9th day of March, 1921. At the time of said conveyance, the Feltons executed a mortgage in the sum of $18,000 to Thompson and wife, then residing in Polk County, Iowa. This mortgage was given to secure the purchase price, and covered the parcel of land in question. The indebtedness bore 6 per cent interest, payable on January 1st and March 1st of each year. The Feltons took possession of the land and began to make certain improvements thereon, including a house, barn, and other structures necessary for the proper operation of the land according to the usual and proper method of good husbandry. These improvements were made under plans formulated by the purchaser, Felton, and the initial payment of $1,000 made on the contract by the Fel- tons was returned by Thompson, to assist Felton financially in making these improvements. In August, 1923, the local lumber company, by reason of Felton's default in payment of materials furnished him, threatened to foreclose a mechanic's lien for the materials so furnished for the making of the improvements on this land. At this time, Thompson loaned Felton $1,000, to apply on the bill for materials purchased from the said lumber com- pany, and as evidence of said loan, two notes, payable to Thomp- son, were signed by Felton and his two daughters. This money was paid to the lumber company, and the loan by Thompson has been repaid by the borrower to the extent of $500. The fore- going statement of facts discloses the status of affairs between

appellant Felton and appellees Thompson and wife on April 14, 1924. On said date, a warranty deed was executed by the Feltons, in consideration of $21,000, to the Thompsons, conveying to the latter the 120 acres involved herein. There were no conditions, reservations, or exceptions recited in said deed. It was duly filed for record on the date of its execution. Thereafter, on the 28th day of April, 1924, Thompson and wife executed a farm lease to the Feltons of said land on a crop share and cash basis, which lease commenced on the first day of March, 1924. The lease provides that the parties of the first part [Thompsons] "agree to let parties of the second part [Feltons] have free use of buildings and all pasture land now used as such;" and further, "first party [Thompson] reserves the right for himself, future agents, lessees or grantees to enter upon said premises during the fall of 1924 for the purpose of doing fall plowing, or making other improvements, after the crops for that season have been cut, stacked, or removed, or to enter said premises at any time to review the same." It appears further that, on October 7, 1924, what is called a standard farm lease was entered into by and between the Thompsons and the Feltons as to the land in question. This lease covered the period from March 1, 1925, to March 1, 1926, and contained the following privileges:

"Second parties [Feltons] have the privilege of two additional years' rental of premises, providing parties get along satisfactorily and they have complied with all the terms of this lease. * * * First party reserves the right to sell premises, but second parties [Feltons] are hereby given the privilege to purchase above premises at any time during the term of this lease, for the sum of $22,000 plus any improvements added after this date."

It may be stated further that the Thompsons entered into a farm lease of this land on August 19, 1927, with one A. V. Mayhew and wife Madge, for a period of one year, commencing March 1, 1928.

We may now return to the salient date, April 14, 1924. At that time, the Feltons said nothing about the interest due on March 1st of that year. Thompson went to the farm and visited with Felton, for the purpose of making a settlement, in order

34

to avoid the foreclosure of the mortgage of $18,000, to which reference has heretofore been made. The unpaid accrued interest to March 1, 1924, was $2,764.80. There was also due on the note signed by Felton and his two daughters about $500. There was also unpaid the last half of the 1923 taxes, in the sum of $63. There were other items due the Thompsons, amounting to $77.45. In brief, the aggregate sum due the Thompsons by Felton was $21,405.25. It may be noted that some of these items were not covered by the Felton mortgage, but the proposal was made by Thompson to cancel all of this indebtedness and pay the smaller items, provided that the Feltons would execute a deed to the Thompsons of the land in question. This was done, and as part of this same transaction, and as a consideration therefor, the $18,000 mortgage was satisfied of record, the mortgage note was delivered to Felton, and also the unsecured $1,000 note; and the smaller items heretofore mentioned were paid by Thompson. What more could be done in effecting a settlement of this character? According to the testimony of Felton himself, the 120-acre tract was worth less than the principal ($18,000) of the purchase-price-money mortgage executed by Felton.

After the plaintiff had filed his petition asking that the title be quieted in him, and the defendants (Thompsons) had filed their cross-petition, the Feltons filed a cross-petition and a counterclaim. The counterclaim was predicated on the theory that the Thompsons were obligated to pay for the improvements placed upon the land. In the first place, the right of an occupying claimant, as defined by Chapter 440, Code, 1927, is not involved in the instant case. In the second place, the cross-petitioners (Feltons) have failed to establish by competent evidence any right of recoupment by reason of their making the improvements on this land.

It is also alleged in the cross-petition of the Feltons that, at the time the purchase price of the farm was evidenced by a purchase-money mortgage in the sum of $18,000, a contemporaneous collateral oral agreement was entered into between Felton and the Thompsons, by the terms of which agreement Thompson orally agreed with Felton that, if he would take title to the real estate, execute the mortgage thereon for the purchase price as aforesaid, and improve and move upon said real estate, Thompson would not disturb the peaceful possession of Felton on said

premises on account of nonpayment of any deferred interest that might accrue on said mortgage pending the maturity thereof, until such time as said Felton was able to finance the same; and in the event that Felton became unable to finance said land, that Thompson would repay the said Felton the value of any improvements placed thereon by the said Felton, subject to a fair rental for the use of said real estate, for any time the interest and taxes were not paid by the said Felton. Was Felton, in the light of the facts and circumstances heretofore recited, entitled to prove by parol evidence the alleged contemporaneous oral agreement? We answer in the negative. As heretofore stated, there was no accident or mistake or legal fraud pleaded, and no prayer for the reformation of any contract entered into between these parties. Each of the said contracts, respectively, to which reference has been made, was certain and unambiguous in its terms. There was ample consideration for each contract; and under the well defined rule of evidence, the oral agreement, as pleaded by Felton, was inadmissible to add to, alter, or contradict the terms of the instrument in question. See *Jones v. Sargent,* 193 Iowa 1256; *Rath v. Schoon,* 192 Iowa 180; *Banwart v. Shullenburg,* 190 Iowa 418; *Miller v. Morine,* 167 Iowa 287; *Blumer v. Schmidt,* 164 Iowa 682; *Fawkner v. Smith Wall Paper Co.,* 88 Iowa 169.

In view of the record and our conclusions thereon with reference to the contentions of the appellant, the decree entered by the trial court is—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.