## SUSAN L. DAYTON *vs.* WM. S. STEWART et al.

*Voluntary Deed of Trust to be Held Irrevocable.*

A young widow with two children, when contemplating a second marriage, executed a voluntary deed conveying certain real estate to a trustee in trust to permit her to hold the property for her sole use during life, free from the control or interest therein of any future husband, and upon her death to convey the property to her two named children, or their issue, etc., with cross remainders. The deed was also signed by the trustee, recorded and then returned to the grantor who kept it in

her possession. Eighteen years afterwards she filed the bill in this case praying that the deed be vacated and alleged that she did not know when she executed it that it could not be revoked; that her mother had unduly influenced her to make the same; that she had not delivered the deed to the trustee, and had always herself exercised exclusive control over the property. *Held,* that the absence of a power of revocation in the deed was not due to any mistake on the part of the grantor; the attorney who drew the instrument having fully explained to her that it was irrevocable; that such power would have been inconsistent with her purpose in the creation of the trust which was to protect the property from the consequences of the contemplated second marriage and secure the remainder to her children; that no undue influence had been exerted upon her; that the signing and acknowledgment of the deed by the trustee was an acceptance of the trust and the execution and recording affords a presumption of delivery in which she has acquiesced for more than twenty years; that her control of the property was in accordance with the terms of the deed, and that therefore she is not now entitled to have the trust so created annulled.

Appeal from the Circuit Court for Dorchester County (LLOYD, J.)

The cause was submitted to the Court on briefs by;

*Robert W. Mobray*, for the appellant.

No appearance for the appellees.

JONES, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Dorchester County dismissing a bill in equity filed therein by the appellant, on the 28th day of August, 1901, praying to have set aside and annulled a deed executed by her on the 25th day of September, 1884, and refusing the relief prayed in said bill.

The deed recites that the appellant, "in consideration of five dollars  *  *  *  and desiring to secure a home for herself and children" thereinafter named, grants to Edward W. Le-Compte the real estate therein described upon the trust, and with the covenants expressed as follows: "In trust however, to and for the sole and separate use, benefit and behoof of the said party of the first part, her children as hereinafter named,

and for the further trusts and uses as hereinafter set forth to wit: that the said party of the second part will suffer and per- mit the said party of the first part without let or molestation, to have, hold, use, occupy, possess and enjoy during the term of her natural life, for her own sole use and benefit, separate and apart from any husband she may hereafter have, should she see proper to marry again, and wholly free from his con- trol and interference, debts and liabilities, curtesy and all other interests whatsoever, the aforesaid premises, with all the rents, issues, profits and proceeds arising therefrom, and then imme- diately upon her decease to execute a conveyance in fee of the premises to her two children, William S. Stewart and Thomas G. S. B. Stewart, share and share alike, as tenants in common, but if both of said children shall die, without leav- ing child or children living at the time of their death during the lifetime of the said Susan L. Stewart, then to convey said premises, in fee, to any future husband she may have who survives her and failing said husband to suffer and permit her to make testamentary disposition thereof the trust hereby created having then failed. But if one of the aforenamed children should die in the lifetime of the said Susan L. Stew- art without children as aforesaid, then the surviving named child shall stand in his or her stead as to the purposes of this trust, and if either of such children should die as aforesaid, to- wit: during the lifetime of said Susan L. Stewart, but leaving a child or children, then such offspring shall stand in the place of the deceased parent for all the objects and trusts hereby created. Provided that the party of the second part will at any and all times hereafter at the request and direction of the said party of the first part, Susan L. Stewart, expressed in writing and signed by her, sell and convey said premises, or any part thereof, to do which full power is hereby given, for the purpose, nevertheless and solely to purchase other real estate as requested by said Susan L. Stewart or to invest the same in some other manner at her request, for the purposes of the trust hereby created, in such case she to have only the interest of the fund during her lifetime, the principal to follow

the direction of the trust as hereinbefore declared and created. Such sale or sales if made to be in fee-simple and free from the therein created trusts which are to follow the fund arising therefrom, and not to cling to the properties so sold and all the provisions of this deed are to apply to any future real estate that may be acquired by sale of the real estate herein conveyed, or any sequence of parcels of real estate that may be acquired therefrom or thereby; it being the intent of this deed to settle said properties and the use and benefit thereof on the said Susan L. Stewart during her lifetime, and at her death the same to go to her aforementioned children or their child or children or both or either of them, should any of such classes survive her, and if they should not then to go to any future husband she may have who survives her, and if she have no husband living at the time of her death then the trust to be at an end, and she to have full testamentary power over said properties or the future proceeds and issues thereof. And the said party of the first part hereby covenants that she will warrant generally the property hereby conveyed to the said party of the second part, his heirs and assigns, and the said party of the second part covenants that he will faithfully perform and fulfill the trusts herein created."

This deed was signed and acknowledged by Edward W. LeCompte, the grantee and trustee named therein, as well as by the appellant, by her then name of Susan L. Stewart, and was duly recorded. As grounds for the relief sought by the bill it is therein alleged that the deed in question is a voluntary one and "not founded upon any meritorious or valuable consideration ; that it contains no power of revocation ; that she was not advised by the draughtsman of the deed nor by any one else of the effect of omitting from the deed a power of revocation; that she did not "properly and thoroughly understand the force and effect" of such omission; that she never intended to exclude a power of revocation from the deed and thus place her property beyond her reach, but believed the deed of trust to be revocable or she would have never signed it; that at the time of signing and executing the deed she was

a very young woman, twenty-three years of age and a widow, her husband having died a few years before leaving her with the two children who are named in the deed; that "she was wholly ignorant of the force and effect of such a deed" and "was not left to the free, unrestrained, and deliberate use of her own judgment in the matter but was persuaded, unduly influenced and prevailed upon to sign the said deed of trust by her mother   *   *   *   and other persons whose purposes she now understands to have been that of securing" the properties conveyed by the deed to her two children named therein "in total exclusion of any children" that might be born to her from any subsequent marriage; as well as, for the further purpose of preventing her creditors "from resorting to said property to collect their just claims;" that after the deed was signed it was left by her mother "with the attorney that her mother had gotten to draw it" and without her "consent or knowledge" this attorney, handed it to the clerk of the Court for record and the same was recorded, "but without her" consent or knowledge and against her wishes and desire; that a few days after the recording of the deed the same was returned to her and has remained uninterruptedly in her possession ever since; that she never delivered the deed to the trustee therein named or to any person for him nor authorized any person to deliver it to him and never intended it should be delivered to him; that she has never ceased at any time "to exercise entire and exclusive ownership and control over" all of the property mentioned in the deed—collecting rents, paying taxes, keeping up repairs as if the deed in question had never been made and the trustee has never intermeddled in any manner with the said properties, nor recognized the existence of the trust which the deed purports to create and has never accepted the trust; that she executed the deed when she was contemplating marriage with Benjamin Hart whom she afterwards married and who died on the 27th of February, 1885; that she has, as the offspring of this marriage, one child, a minor living with, and cared for by her; that in September, 1899, she together with her son, William S. Stewart, mort-

gaged the property in question to the extent of all the right, title and interest of herself and her said son therein; that in 1888, she intermarried with one James R. Dayton and there was born to her from this marriage two children now aged respectively eleven and eight years and living with and cared for by her; that she has obtained a divorce from her said last-named husband and by the decree of divorce the custody of the two children of the marriage with him was awarded to her.

The trustee named in the deed of trust in question was dead at the time of the filing of the bill in this case and his heir at law was made a party defendant, but did not answer. The other defendants are the mortgagee mentioned in the bill and the two children of the plaintiff who are named in the deed of trust here in controversy and who are both adults. The mortgagee and the two children of the plaintiff each answered admitting the allegations of the bill and submitting to such decree as the Court might think right. The need for invoking the interposition of the Court to obtain the relief which the plaintiff seeks arises therefore from the fact that the deed here drawn in question contains limitations over in the contingencies therein mentioned to parties who are not, and cannot, now be brought before the Court.

Whether the plaintiff can have the relief sought by her bill is largely one of fact. The legal principles which control the determination of the questions which the bill, in its allegations, raises, would seem to be well settled and have been fully recognized in recent decisions of this Court. Before adverting to the evidence in the case it may be convenient to ascertain the rules of law in the light of which it will be necessary to consider it. It is laid down in 1 *Perry on Trusts*, sec. 104, that "a trust once created and accepted without reservation of power can only be revoked by the full consent of all parties in interest; if any of the parties are not in being or are not *sui juris*, in cannot be revoked at all. It is perfectly clear that where the settlor did not misapprehend the contents of the deed and there was no fraud or undue influence and no power of revocation was reserved, the settlor is bound, though

some contingency was forgotten and unprovided for." It will
not be necessary to look further than our own decisions for
support of the doctrine, here enunciated, in adjudicated cases.
In the case of *Goodwin* v. *White*, 59 Md. 503, it was said by
JUDGE ALVEY, speaking for this Court, "that every person
whether man or woman, of sound and disposing mind, if un-
der no legal disability, has the absolute right of making any
disposition of his or her property that he or she may think
proper; provided it does not interfere with the existing rights
of third persons.   If the disposition of property be fairly
made by a competent person, though entirely voluntary and
without consideration, it is perfectly valid, and cannot be re-
scinded simply because the Court may think it absurd or im-
provident that such a disposition should have been made."
He enforces this by quoting from the case of *Villers* v. *Beau-
mont*, 1 Vern. 100, with approval, the observation of LORD
CHANCELLOR NOTTINGHAM to a like effect. This language has
the greater significance here from having been used in a case
in which a young woman was seeking to have set aside a deed
which she had improvidently made and which was wholly gra-
tuitous and voluntary; and a case which the Court said was a
hard one where relief was withheld with regret.

In the case of *Brown* v. *Mercantile Trust Co.*, 87 Md. 377,
in which a number of cases adjudicating questions arising
upon voluntary trusts are collected and made the subject of
comment, it is said in reference to the absence of a power of
revocation from the instrument creating, or from the declara-
tion of such a trust that "the rule now seems to be the one
stated by LORD JUSTICE TURNER in *Toker* v. *Toker*, 3 DeG. J.
& S. 491, "That the absence of a power of revocation may be
evidence that the party did not understand the transaction and
so of undue influence.   But whether it would be so or not,
would depend upon all the circumstances of the case * * *
Again, I think it is going too far to say that no voluntary set-
tlement can be valid unless the settlor is advised there should
be a power of revocation inserted in it.   What the Court has
to be satisfied of in these cases, I apprehend, is that the set-

tlement, whether containing or not containing a power of re-
vocation, is the free determined act of the party making it,
and the absence of advice as to the insertion of a power of
revocation is a circumstance and a circumstance merely, to be
weighed in connection with the other circumstances of the
case." In the still later case of *Rogers* v. *Rogers*, 97 Md. 573,
it is affirmed: "There is a class of voluntary settlements to
which powers of revocation are appropriate, and another class
to which they are not, and it is fairly well settled that each
case depends in this regard upon its own facts."

It appears therefore, from the foregoing statement of the
rules of law applicable here, that, in the absence of other cir-
cumstances affecting the validity of the deed, under consider-
ation, or determining its revocable character, the fact that it
was without consideration and voluntary affords no sufficient
ground for setting it aside. That it contains no power of re-
vocation does not seem to be inappropriate. It is stated in
the bill that it was partly the object of the deed to prevent the
creditors of the grantor from resorting to the property it con-
veyed "to collect their just claims." The grantor, however,
testified that she had no creditors at the time of executing the
deed; that she did not at the time "owe a cent on earth to
anybody and had not previous to that time owed any one."
The object of the deed as expressed on the face of it, and as
it appears in evidence, was to secure the property thereby con-
veyed to the grantor and to her children named in the deed;
and its execution was suggested by the fact that she was at
the time contemplating a second marriage. It being intended
to protect the property conveyed from the contingencies that
might attend upon this second marriage and free it from the
marital rights of her future husband that her children might
enjoy it in the event of her death, and that she might be more
secure in its enjoyment while she lived was inconsistent with a
power of revocation in the deed. Its execution would have
afforded but small protection to its beneficiaries with the means
embodied in it to, at any time, recall and annul it and expose
the property to the very contingencies against which it was de-
signed to secure it.

That the appellant did not have an intelligent understanding of what she was doing when she executed the deed here in controversy, and that the absence of a power of revocation in the deed was due to mistake or misunderstanding on her part is not borne out by the evidence. It is true her testimony given in the case agrees substantially with the statements of her bill; but it is about as general in its character as are those statements; and its effect is weakened by the fact that, according to her own testimony, the deed in question, almost immediately after its execution, came into her possession and remained in her possession for nearly twenty years and until after the death of her mother whose influence, she says, induced the execution of the deed, and the death of the trustee, without a word of complaint or remonstrance from her to her mother, the trustee or the attorney who drew the deed against what she alleges now was done against her wish and consent. She is shown not to be lacking in intelligence and could scarcely have failed to perceive the purport and effect of the deed if she read it which she had the most abundant opportunity to do. It is not shown, and not even alleged, that any fraud or deception was practiced or attempted to be practiced upon her by anybody concerned with the transactions in question and certainly no motive appears for any of these parties to have designed to deceive her. Nothing is made to appear which prevented her from getting an intelligent understanding of the effect of her act in executing the deed in question if she made use of the opportunities she undoubtedly had to be informed.

The case however in this aspect does not rest upon this negative character of evidence. The attorney who drew the deed in question testified that he had a distinct recollection of the circumstances attending the transaction; that the appellant came to his office "and stated that in anticipation of marrying again she wished to make a settlement of her property before her marriage and in the manner in which she pointed out." He was asked what was said to the appellant as to the deed being irrevocable to which he answered. "I explained to her

that it would be irrevocable and advised her against it for that reason. I remember the general fact that I advised her that the deed would be irrevocable, but I do not remember the exact words that I used."

The evidence utterly fails to show that the appellant in the execution of the deed in question was acting under what can be characterized as undue influence exerted by her mother. The latter took no benefit under the deed, was a stranger to it and was entirely without motive, as far as appears, to attempt to exert such influence. In the suggestions she made or the advice she gave in this connection; or such persuasion as she may have used in regard to making the deed she seems to have been prompted by what commended itself as a matter of right and justice that the children who were beneficiaries under the deed should be secured in what had been accumulated by their father rather than it should go to the husband and children of a second marriage. In support of the charge, in this connection, of undue influence exerted upon her by her mother, the appellant, in her testimony, does not mention a single fact or circumstance essentially characteristic of an attempt to bring about the execution of the deed by such means.

It is further contended by the appellant that there was never any valid delivery of the deed here in question and no acceptance of the trust by the trustee named therein. As has been seen the trustee signed and acknowledged the deed and covenanted to perform and fulfill the trust. There could not be a more express and palpable acceptance of the trust than this. The acknowledgment and recording of the deed afforded a presumption of a legal delivery by the grantor. *Stewart* v. *Redditt*, 3 Md. 67. If appellant did not direct the recording of the deed she knew of the recording immediately after it had been done and acquiesced in it for nearly twenty years. In addition to this presumptive evidence there is testimony going to show an actual delivery to the trustee from the record office.

That the appellant continued to exercise control and management of the property which was here the subject of the trust in question is without significance since the deed pro-

vided that she should be permitted to take and receive the rents, issues and profits ; and that she was permitted to use the property as alleged and testified was not inconsistent with the existence of the trust.

It is further contended that by force of the Statute of Uses the title to the property embraced in the deed in question is vested in the appellant because the deed creates, as respects the appellant, only a passive trust. It is not perceived how the Statute of Uses can be invoked with any effect in this proceeding or to give title to the character of relief here sought. The statute might be invoked in construing the deed here involved but not to annul it. For reasons appearing in the foregoing expression of views the decree of the Court below will be affirmed with costs to the appellees.

> *Decree affirmed with costs to the appellees.*

(Decided November 17th, 1904.)