FREDRIKA KING WALLACE, *vs.* INDUSTRIAL TRUST COMPANY,
*et al.*

JUNE 19, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Voluntary Trusts.   Power of Revocation.*

Where it appeared that at the time of the execution of a voluntary trust of all her property by complainant, which contained no power of revocation, that complainant was a woman easily influenced to give away her property, and under heavy obligations, so that it was feared that her estate would be squandered and herself and daughters impoverished; that the trust was under consideration for a period of six months before its execution; that she consented to it, at the solicitation of her family, for the protection of herself and daughters; that the trust was solely for the benefit of herself and her daughters; that the deed was prepared by attorneys who had been her personal counsel in a divorce proceeding for a period of fifteen months prior to the date of the execution of the deed; that by the testimony of two witnesses she read the deed, and had it read to her and explained to her before signature, and she understood it was a permanent arrangement; and that advice and explanation were given her by her own attorney:—

*Held*, that from the above facts the court must find that complainant did not believe, at the time of the execution of the deed, that she was creating a trust revocable at her pleasure, which fact complainant asserted in her bill.

*Held*, further, that in this case there was no question of misrepresentation, of concealment; of benefits conferred on the trustee, or of fraud.

*Held*, further, that, while approving the doctrine, established in this State, that in such cases the absence of a power of revocation is *prima facie* evidence of mistake, where a deliberate attempt to make it irrevocable does not appear, in this case the rule did not apply because the primary underlying purpose of the trust was entirely inconsistent with such power of revocation and the evidence convinced the court that at the time of the execution of the deed such power was neither intended nor desired by the grantor.

BILL IN EQUITY.   Certified under C. P. A., § 338, for final decree.

PARKHURST, J.   This suit was commenced in the Superior Court in Providence county, on the equity side of the court, and was assigned for hearing on bill, answer, and proofs.   At

the hearing it appeared that the cause was ready for final decree, and it was certified to this court under C. P. A. § 338.

The pleadings are in substance as follows: The bill in this suit sets forth:

(1) That the respondents, Fredrika Montgomery Macleod and Kathleen King Macleod, are the only children of the complainant and are of the age of seventeen years and eighteen years, respectively.

(2) That William J. King died August 8, 1885, leaving a will.

(3) That said will created a trust of the residue of the testator's estate which was to continue until the youngest grandchild of the testator, living at the testator's death, should attain the age of twenty-one, when the said residue was to be distributed.

(4) That the youngest grandchild, living at the testator's death, attained the age of twenty-one on June 26, 1904.

(5) That the complainant's father was Edward G. King, who was a son of and who pre-deceased the said testator, and at the time of any distribution of the said trust estate the complainant would be entitled to a large share of the property.

(6) That prior to June 26, 1904, the complainant was married to George R. Macleod, and on September 11, 1902, proceedings were begun in the Supreme Court of Rhode Island for a divorce, which was granted by said court on December 19, 1903; that while the complainant was covert, as aforesaid, she undertook the liquidation of many obligations not primarily her own, several of which were falling due at about said time of distribution; that the complainant's brother, William J. King, 2d, was desirous that the complainant, prior to said period of distribution, execute a deed of trust of her share of the said trust estate, and caused such a deed to be drafted, in which he was named as trustee, and which the complainant executed on December 14, 1903, a copy being annexed to the bill and marked Complainant's Exhibit "A."

(7) That said trust deed was executed on the solicitation and advice of said William J. King, 2d, without consideration,

and for the sole purpose of placing him in a position to deal with the creditors and alleged creditors of the complainant.

(8) That the complainant did not read the said deed, nor know that the express power of revocation was omitted therefrom, and that William J. King, 2d, thought the instrument to be revocable and so advised the complainant.

(9) That William J. King, 2d, received as trustee under said deed in partial distribution of said trust estate many thousands of dollars.

(10) That on or about October 4, 1906, William J. King, 2d, resigned as trustee under said deed and the respondent Industrial Trust Company was appointed in his place, and now holds said office; that the complainant has informed the Industrial Trust Company of the above facts and requested an accounting and a transfer of all the trust property which it holds under the said deed, first deducting a reasonable charge for its services; that the Industrial Trust Company has made said accounting, but has informed the complainant that it can not safely terminate said trust.

(11) That the omission of the power of revocation was by mistake, the complainant did not intend to make an absolute settlement, and would not have signed the instrument if she had been aware that it made such a disposition of her property.

(12) That the purpose of said deed has now been accomplished, the obligations of the complainant contracted as aforesaid having been paid and adjusted, and no reason exists for the further continuance of said trust.

In consideration whereof the complainant prays that the court order Industrial Trust Company to convey to her all its right, title, and interest in and to the property in said deed of trust described, and order the other respondents by their guardian *ad litem* to execute to the complainant a deed of release and quitclaim of all their right, title, and interest in and to said estate.

In its answer, the respondent Industrial Trust Company admits the allegations contained in the first, second, third, fourth, fifth, and tenth paragraphs of the bill of complaint, and that the complainant executed the trust deed, but states that

it is not informed as to the circumstances under which said deed was executed and therefore neither admits nor denies the allegations contained in the sixth, seventh, eight, ninth, eleventh and twelfth paragraphs of the bill. The answer of the respondents Fredrika Montgomery Macleod and Kathleen King Macleod is the same as that of Industrial Trust Company, except that they neither admit nor deny the allegations contained in the second, third, fourth, fifth, and tenth paragraphs of the bill.

It appears from the testimony in this case that on December 14, 1903, the complainant executed a voluntary trust deed, a copy whereof has been made "Exhibit A" in this suit, by which she conveyed to her brother, William J. King, 2d, all her property coming and to come to her from the estate of her grandfather, William J. King.

The trusts created by the deed were as follows:

(1) That the trustee be the complainant's attorney irrevocable to collect and receive the said property.

(2) That the trustee manage said property and invest and re-invest the same according to his best judgment so long as the complainant live and until the respondents Kathleen King Macleod and Fredrika Montgomery Macleod, the daughters of the complainant, shall both have arrived at the age of twenty-one years.

(3) That the trustee pay, compromise, or contest the claims against the complainant according to his best judgment.

(4) That the trustee, in his discretion, provide from said trust estate for the suitable and comfortable support of the said two daughters so long as the complainant live and until both of said daughters arrive at the age of twenty-one years.

(5) That the trustee have power to pay from said trust fund such sums as he think fit to the complainant or for her benefit.

(6) That upon the death of the complainant and arrival of both daughters at the age of twenty-one the trustee pay over the trust estate to the said daughters, or to the survivor of them, their issue, etc.

(7) That the Appellate Division of the Supreme Court have

power to appoint a successor to the said trustee subject to the approval of said complainant.

It also appears that the said Fredrika Montgomery Macleod will be twenty-one years of age on February 5, 1912, and the said Kathleen King Macleod will be twenty-one years of age on November 4, 1910; that the said property was received and managed by the said William J. King, 2d, in accordance with the provisions of the deed, until on or about the fourth day of October, 1906, when he resigned as trustee, and the respondent Industrial Trust Company, the present trustee under said deed, was duly appointed his successor in the trust.

The complainant, in support of her prayer for a reconveyance from the respondent Industrial Trust Company, relies upon a claim that she did not read the deed when she executed it; that she executed it in the belief that it was revocable, and that the purposes for which said deed was executed have been accomplished and no reason exists for the further continuance of the trust.

And it is further claimed on her behalf, by her counsel in this cause, that she was induced to execute the deed by her brother William J. King, 2d, who was named in the deed as trustee, and who had been up to that time her only adviser and man of affairs; that she had no legal advice from any attorney except his attorney, and from him only at the very moment of execution of the deed; that she had no independent legal advice whatever; that she did not intend to create an irrevocable trust, but only such as would always be subject to her own control.

The claim set up in the bill that the sole purpose of this trust was to enable her trustee to liquidate her financial affairs, and settle with her creditors, or contest their claims, and that such purpose has been accomplished, while it is supported in a general way by her own testimony, is contradicted by the terms of the deed itself, and is overwhelmingly disproved by the testimony of her two daughters and her two brothers, who were examined after she testified and whose testimony she does not attempt to rebut. They all showed that she was a woman of weak will, easily persuaded and influenced to give away

money or to enter into obligations in large amounts; that not only was she, as she admits, under heavy liabilities assumed, or claimed to have been assumed, during coverture with her former husband prior to her divorce, as to which special powers of payment, compromise, or contest were given to her trustee, but she had, even pending her divorce proceedings and before a final decree was entered, such close and friendly relations with one or more persons that she was influenced to give away or promise sums of money in such amounts that her brothers feared she would squander all of her estate and leave nothing for her daughters or herself; that they were alarmed about this state of affairs, and frequently remonstrated with her and she promised amendment; that for a period of five or six months prior to the execution of the trust deed, the matter of protecting herself and her daughters from the consequences of her own imprudence and recklessness by means of a trust (which she at first refused) was under consideration; that meanwhile she did not improve in the matter of prudence in her conduct of affairs, and that finally she realized the danger and consented, at the earnest solicitation of all her brothers (not William J. King, 2d, alone), to execute a trust deed, not only to provide for the liquidation of claims then preferred against her, but also to protect her daughters and herself from future squandering of her estate.    Under these circumstances, the claim that she did not intend to create an irrevocable trust, but only one that would always be subject to her own control, so that the primary and underlying purpose of the trust could be nullified by her at her mere whim, or by reason of external and harmful influences, can not be supported, particularly in view of the testimony of her brothers and her children that she intended the protection afforded by the trust to be permanent for the benefit of herself and her daughters.    And again it is to be noted, with emphasis, that she does not attempt to rebut any one of these particular and circumstantial statements of her two brothers, and her two children, but contents herself to rely solely upon the very general statements of her intention contained in her own direct testimony.

The further claims that she did not read the deed, and exe-

cuted it in the belief that it was revocable at her pleasure; that she was induced to execute the deed by her brother William J. King, 2d, named as trustee, her sole adviser, and man of affairs; that she had no independent legal advice, and no advice except from his attorney, are not supported by the testimony. It appears, with no attempt at rebuttal by her, that not only William J. King, 2d, but also two other brothers, Edward G. King and Gilbert M. King, took part in the conferences which ended in her execution of the deed, the said Edward G. King coming specially to Providence on two or more occasions to take part with his brothers in this conference with her in the endeavor to induce her to consent to this measure of protection for her benefit and the benefit of her daughters; and it is to be noted, in this connection, that neither of her brothers takes any benefit, even remotely, under the trust, which is solely for the benefit of the complainant and her daughters. Equally untenable is the claim that she had no independent legal adviser. On the contrary, it appears by the records of this court, and was admitted in argument, that the firm of Barney & Lee, in whose office the trust deed was prepared, had been her own personal attorneys in her divorce proceedings from September 11, 1902, to December 19, 1903, a period of upwards of fifteen months, prior to and including the date of the execution of the deed (December 14, 1903); they must have been fully conversant with all her affairs and obligations during all that time; and it seems to us that they were the very attorneys who should have been consulted and who were most competent to advise her at this juncture; and there is not a word of evidence to show that they were ever the attorneys of William J. King, 2d, or ever advised him except in this matter. It is further shown by the testimony of complainant's two brothers that she read the deed herself, and that it was read to her in full before she signed it, and that she was fully advised as to its meaning and contents, which were explained to her by William J. King, 2d, and that she fully understood that the arrangement was a permanent one for the protection of herself and her daughters from the consequences of her own weakness in financial affairs.

Furthermore, it appears that advice and explanation was given to the complainant by Mr. Barney, who was her own personal counsel at the time of the execution of the deed, as follows (Rec. p. 5-6): "I delivered the paper to Will King, and he had some talk with Mrs. Macleod. I don't know whether he read the paper to her or not, but within a few minutes he told me that Mrs. Macleod was ready to execute the paper. I then took it to her, and asked her if she understood what it was. She stated she understood she was putting all her property into her brother's hands as trustee, and that it was all right, she had every confidence in him. I don't know whether she then signed it before asking me another question, or not. My impression is she started in to write, and then she said, 'Mr. Barney, what would happen if anything happened to Will?' I said, 'It is provided here that a trustee will be appointed by the Appellate Division of the Supreme Court, subject to your approval.' I told her that the court could, of course, appoint some one whom she did not approve of, if she was not reasonable about the matter of approval, but would probably listen to any reasonable suggestion from her; that, no matter who was trustee, she always had the protection of the court against any unreasonable action. She then asked me what would happen after all her debts were paid, and I told her that the trust would continue on for the benefit of herself and her children. I think she said something like this: 'By and by, when those children grow up, I may want to terminate this trust. Can I do so?' I told her my impression was that, on application to the Supreme Court, and showing that it was proper for her to manage her property, she could terminate the trust, and that at all events, after the children became of age, they could together terminate it at any time. If she had not previously signed the paper, she then signed it, and at all events, the acknowledgment, if not the signature, was after this conversation."

In view of the fact that she had had the matter of a trust for the settlement of her financial affairs, and for the protection of herself and her daughters, under consideration for at least five or six months prior to December 14, 1903, that she had been advised fully as to what should be done to those

·ends, we deem that the advice and explanation from her counsel were sufficient and proper, and that she had no reason to believe, and as a matter of fact did not then believe, that she was creating a trust revocable at her pleasure. On the contrary, we are constrained to believe, from the whole testimony, that she then knew that she was making an irrevocable trust, and that she then intended so to do, for reasons which she then fully understood, and which have been fully set forth herein; and that her present idea that the trust was then intended to be revocable and ought now to be revoked has grown up out of her changed conditions of life, the partial estrangement of her children, owing to their disapproval of her subsequent conduct, and the circumstances attendant upon her recent marriage.

For reasons fully set forth above, we do not find the deed to have been improvident, but quite the contrary under all the circumstances surrounding the parties in interest.

The complainant cites numerous cases to the general effect that a deed executed by one to her adviser, on his solicitation, and without independent advice, will be set aside by a Court of Equity. *Prideaux* v. *Lonsdale,* 4 Giff. 159, confirmed in 1 De Gex, J. &. S. 433; *Garnsey* v. *Mundy,* 24 N. J. Eq. 243, 23 Am. Law. Reg. (N. S.) 345; *Rhodes* v. *Bate,* L. R. 1. Ch. 152, 257. Many other cases might be cited to the same effect,— and we have examined all the cases cited by the complainant and many others. We do not for an instant dispute the principles of those cases. But they do not apply here. In all those cases, there was evidence of such misrepresentations or concealment, or of benefits conferred upon the grantee, trustee, or beneficiaries without the knowledge or. full understanding of the settlor, that they all come within the general class of deeds obtained through fraud. Here no such case is shown. The complainant was advised by her own attorney, and she was fully aware of what she was doing and of the necessity therefor and no benefit was conferred by her deed except upon herself and her daughters.

··Again, the complainant cites cases to the effect that the absence from a voluntary deed of a ·power of revocation, is

*prima facie* evidence of mistake where a deliberate intent to make it irrevocable does not appear, and refers to *Aylsworth v. Whitcomb*, 12 R. I. 298; *Neisler* v. *Pearsall*, 22 R. I. 367; *Toker* v. *Toker*, 3 De Gex, J. & S. 487; *Coutts* v. *Acworth*, L. R. 8 Eq. 558; *Hall* v. *Hall*, L. R. 8 Ch. App. 430, and many others. We see nothing in these cases to disturb our conclusions stated above. They are all in accord with the principle first enunciated in this State in *Aylsworth* v. *Whitcomb*, 12 R. I. 298, at p. 299, as follows: "This settlement was a voluntary one without any consideration. It is true the instrument contains no power of revocation, but according to the weight of modern authority, this is only a circumstance to be taken into account and is not decisive and where a deliberate intent to make it irrevocable does not appear, the absence of the power will be *prima facie* evidence of mistake." Furthermore, it was freely conceded in the above case by the trustee, as well as by the settlor, that they both supposed that the trust was a temporary provision and that the settlor could revoke it; and so it was admitted that in fact there was a mistake in omitting the power of revocation.

In *Neisler* v. *Pearsall*, 22 R. I. 367, the above principle was approved, but not applied because the deed was irrevocable by its very terms, and there was no evidence of contrary intention. The court quotes with approval the rule adopted by Lord Justice Turner in *Toker* v. *Toker*, 3 De Gex, J. & S. 487, 491, viz.: "The absence of a power of revocation is I think a circumstance to be taken into account in determining such cases as these, and it is a circumstance of more or less weight according to the facts of each particular case,"—and after citing and discussing a number of cases in this State and elsewhere, sums up the effect of the decisions as follows (22 R. I. p. 373): "In all these cases it is admitted that the deliberate intention of the grantor to settle his property beyond his own control makes his deed irrevocable. In suits brought to set aside or cancel such a deed the courts may differ as to the weight to be given to the circumstance of the mere omission of a power of revocation, as they may as to the weight of any other piece of evidence in the case; but if convinced that the grantor in-

telligently intended to make his act irrevocable they will hold it to be so against his subsequent attempt to cancel it."

We do not find it necessary to discuss the cases cited by the complainant further, because we stand by the doctrines laid down in our own cases cited above, and regard the absence of a clause of revocation in a voluntary deed intended to be made revocable as "*prima facie* evidence of mistake" or as "a circumstance to be taken into account;" and in this case we do not find the omission of the power of revocation to be *prima facie* evidence of a mistake, because we have found that the primary underlying purpose of the trust was entirely inconsistent with such power of revocation, and the evidence convinces us that such power was at the time of execution of the deed neither intended nor desired by the grantor.

This case falls clearly within the principles of a number of cases cited by the respondents, where the settlor, seeking protection for herself and children, against the importunities or persuasions of an improvident husband, or against the probable consequences of the settlor's own weakness or infirmity, had made voluntary settlements in trust without power of revocation; and subsequently sought to revoke them by means of suit in equity; the courts refused the relief sought.

In *Keyes* v. *Carleton*, 141 Mass. 45, a woman, for the purpose of preventing her husband from influencing her to dispose of her real estate, conveyed it by deed containing no revocation clause to her brother in trust for her benefit during life, then to her children. She petitioned the court to set aside the deed, as it appeared that, at the time of execution, she did not think of, nor provide for, the contingency of surviving her husband. It was held that, on her husband's death, she was not entitled to have the trust set aside, and at page 50 the court says: "The deed contains no power of revocation, and it is clear that the power of revocation was intentionally omitted." . . "If she had retained a power of revocation, it would have defeated one of the principal objects of the settlement, which was to protect her from the threats, or importunities, or influence of her husband." . . . "It is not, therefore, a case like some of those cited by the plaintiff, where both parties

supposed the settlement to be revocable, and the power to revoke was omitted by mistake.    See *Aylsworth* v. *Whitcomb*, 12 R. I. 298; *Garnsey* v. *Mundy*, C. E. Green, 243, and cases cited."

*Thurston, Petitioner*, 154 Mass. 596, is a similar case to the above.    Here a married woman, in order to place her property beyond her husband's interference or control, voluntarily conveyed it, without reserving any power of revocation, to a trustee for her benefit, for life, then to her issue or in default of issue to her heirs-at-law.    Later she was divorced from her husband, and, the purposes for which the trust was created no longer existing, petitioned to have it set aside.    It was held that the children of the petitioner had an interest and the trust could not be terminated without their assent.    The court says, on page 597: "The petitioner contends that, where no motive exists for not inserting a power of revocation, the absence of such power is *prima facie* evidence of a mistake.    But if she had retained such a power it would have defeated the object of the settlement, which was, as she alleges, to place the property beyond the interference or control of her then husband."    To the same effect see,—*Reidy* v. *Small*, 154 Pa. St. 505; *Stockett* v. *Ryan*, 176 Pa. St. 71; *Riddle* v. *Cutter*, 49 Iowa, 547; *Middleton* v. *Shelby County Trust Co.*, 51 S. W. Rep. 156; *Brown* v. *Mercantile Trust Co.*, 87 Md. 377; *Rogers* v. *Rogers*, 97 Md. 573, and *Dayton* v. *Stewart*, 99 Md. 643.

The clear principle of decision in all these cases is quoted with approval in the last cited case from *Rogers* v. *Rogers (supra)*, where the court after a careful review of most of the cases cited herein and many others, says: "There is a class of voluntary settlements to which powers of revocation are appropriate, and another class to which they are not, and it is fairly well settled that each case depends in this regard upon its own facts."    *Dayton* v. *Stewart*, 99 Md. 643, at p. 650.

Our conclusion therefore is that the bill of complaint should be dismissed, and that the respondents are entitled to have their costs and expenses of suit reimbursed to them out of the trust funds in the hands of the respondent trustee.

36

The case is remanded to the Superior Court with instruction to enter its decree in accordance herewith.

*Comstock and Canning,* for complainant.

*Patrick P. Curran,* of counsel.

*C. M. Van Slyck and Fred'k A. Jones,* for Industrial Trust Co.

*Everitte S| Chaffee,* for himself as guardian *ad litem.*