## WHITESIDE v. VERITY.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1920.)

No. 3336.

1. **Payment ⚖82(1)—For services rendered by brother held sustained by moral obligation, and not recoverable.**

   In a suit to vacate a trust deed and to annul the transaction of which the deed was a part, where it appeared that defendant, acting for complainant, who was his sister, had expended time and money for many years in caring for her interests, and finally in procuring a settlement of a claim involving her husband, from whom she had separated, and had procured a settlement for $30,000, which was more than she expected, the services rendered by defendant, though rendered out of friendship, imposed sufficient moral obligation on complainant to pay therefor to sustain her voluntary payment of $10,000 as compensation for such services.

2. **Trusts ⚖48—Grantor of trust deed, having opportunity to read it, held not misled by silence of grantee.**

   Evidence that defendant made no reply to a letter from complainant indicating that she understood she could revoke the trust deed to defendant does not require cancellation of the deed for fraud, where it appeared that she had ample opportunity to study the terms of the deed before signing it, and that after she signed it defendant stated it was irrevocable, to which statement she made no objection at that time.

3. **Trusts ⚖48—Independent advice unnecessary to sustain trust deed.**

   The fact that the grantor of a trust deed given to her brother acted on the advice of her brother and other members of the family, and had no independent advice, though a circumstance which might be considered in connection with other evidence showing an advantage was taken of the grantor, is not of itself sufficient to require the annulment of the deed.

4. **Trusts ⚖47—Want of caution deed was irrevocable does not defeat it.**

   The fact that a trust deed contained no power of revocation, and that the grantor was not cautioned to that effect before she signed it, is not of itself sufficient to invalidate the deed.

5. **Trusts ⚖48—Circumstances held not to justify canceling trust deed for fraud or undue influence.**

   In a suit to cancel a trust deed, which was given by complainant to defendant, her brother, to secure property obtained by her brother for her from the power of the husband if the parties subsequently became reconciled, the fact that the deed was signed without independent advice to complainant, that she was not expressly cautioned it was irrevocable, and that defendant's daughters were included among the ultimate beneficiaries of the trust, they being members of the class which would be next of kin of the grantor under the conditions under which they would take, *held* not to require the cancellation of the trust, which was apparently made with the dominant purpose of protecting the complainant from dissipation of the fund.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Nannie Wright Verity Whiteside against George M. Verity. Decree for defendant, and complainant appeals. Affirmed.

This suit was brought to vacate a trust deed executed by plaintiff (Mrs. Whiteside) to defendant, and to annul the remainder of the transaction of which the deed was a part. The parties were half brother and sister. At the time in question, plaintiff had been married for some years, and defendant had contributed largely in time and money toward meeting the expenses and the troubles caused by the husband's inability or misconduct. A crisis in plaintiff's domestic troubles had occurred, she had been abandoned and left helpless in New York by her husband, and the defendant went there from Ohio to aid her. He furnished her necessary funds, employed counsel and other assistance, and it came about largely through his efforts that a fund of, net, $30,000 was realized as the indirect result of the husband's supposed misconduct. This was considerably more than plaintiff had expected to get, and defendant suggested to plaintiff, pursuant to a previous understanding between them, that $20,000 should be put in trust for her, and that the excess, being $10,000, should be paid to him in compensation for his expenditures in time and money during the past period of years for her benefit and his efforts in realizing this fund; plaintiff agreed.

The $30,000 was paid to defendant and he came back to Ohio; $10,000 he used for his personal benefit, and he employed Ohio counsel to draw up a trust instrument. On consultation by defendant and his brother-in-law, who was regarded by plaintiff as one of the family, and with the father of plaintiff and defendant, it was agreed, and it was undoubtedly the fact, that this fund imperatively needed protection as against the plaintiff herself, because, if she became reconciled with her husband, as was thought probable (and as happened), she would be quite under his control, and the money would be certain to be dissipated. Accordingly, the trust paper, prepared with the full approval of this family council, was a typical spendthrift trust. It made the defendant the trustee, and provided for paying the income to plaintiff during her life, and, after her death, to plaintiff's then infant daughter during her life, and upon her death to her issue surviving, if any, and, if not, then to plaintiff's four nieces (two of whom were defendant's daughters). It gave the trustee discretion to suspend the income payments when, in his judgment, it was for the best interest of the beneficiary so to do; and it thoroughly and effectively prevented the creation by plaintiff of any valid charge whatever upon the fund or income. This paper was duly signed by plaintiff.

She and her husband did become reconciled, and within about two years she brought this suit in the court below. She alleged that the payment of the $10,000 by her to defendant was without substantial consideration, and was made by her as the result of his undue influence, and while she was in a state of anxiety and worry, and which made her incapable of resisting. She alleged, also, that she was deceived into thinking that the trust deed was a will, and supposed she could change it whenever she wished. Upon final hearing, upon pleadings and proofs, the court below dismissed the bill, and plaintiff appeals.

Albert Bettinger, of Cincinnati, Ohio (Bettinger, Schmitt & Kreis, of Cincinnati, Ohio, on the brief), for appellant.

Rufus B. Smith, of Cincinnati, Ohio (Ralph R. Caldwell and Rufus B. Smith, both of Cincinnati, Ohio, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). With the exceptions to be noted, the questions involved are of fact. In so far as there is, between the testimony for plaintiff and that for defendant, any conflict involving reliability or credibility, we are compelled, as was the court below, to accept defendant's evidence and to reject that of plaintiff.

[1] No cause is established for rescinding the $10,000 payment. Defendant had undoubtedly expended and suffered for plaintiff's benefit several thousand dollars in money and time, anxiety, and trouble (to say nothing of his part in realizing this fund), for all of which the sum named was not extravagant compensation. Doubtless this had been done mostly out of friendship, and there was, until the end, scant, if any, legal debt; but there was ample moral obligation to justify the sister in making him whole with a liberal hand out of the fund which thus unexpectedly materialized. It is entirely clear that she was, at the time, both willing and glad to have him receive this money, and that she fully understood what she was doing, and was not overreached, and that her mental condition was not such as to justify repudiation of her act.

[2] As to the deed, it is sufficient to say that her intelligent and purposeful assent (save for one matter to be discussed) are as satisfactorily established as it is clear that the provisions of the instrument were, in fact, wise and prudent and for her best interests. The exceptional matter referred to is this: After the plan of the deed was settled upon, and it was in preparation, defendant wrote his sister a letter, explaining the plan adopted and who would be the beneficiaries after her death. To this she replied by letter stating that it was satisfactory, but that, if her husband should return, and she should later become satisfied that he had reformed, she should wish to change the will. To this defendant made no immediate written response, pointing out to her that the proposed trust was not a will, and that she would have no power to change it; and from this it is argued that he both allowed and led her to sign the paper, supposing that, whatever it was, it was revocable.

Of course, if this were the proper inference, the deed could not stand, however wise or prudent it may have been; but the record does not justify that conclusion. The letter written by defendant to accompany the deed, when sent to her for execution, is not proved by copy; but defendant says it was a full and complete explanation of its terms and effect. This letter was mailed to her, but the deed, when finished, was taken to her in New York by the brother-in-law and left with her. She read it over during his absence. Later, in his presence, she read it over again and discussed it with him. He told her, when he gave it to her, that it was a perpetual trust. She was an educated and intelligent woman, then wholly in her ordinary state of mind. No misrepresentation of any kind with regard to it was made to her by any one; and it is difficult to conceive that she could have supposed that it was anything other than it actually was. If, upon such a state of facts, a grantor could set aside a solemn deed, no instrument would be safe.

Ample reconciliation of her formerly expressed desire to reserve the power to change and of her later signature of the paper as it was is found in the very reasonable supposition that her expressed desire was hasty and casual, and that reflection showed her that its satisfaction would be unwise. That she did in fact abandon her wish to have the fund remain subject to her future changes of mind, and was content with the paper as it was, is additionally and persuasively shown by the fact that, when the deed was sent back to defendant, he wrote her

a letter acknowledging it, and expressly stating his satisfaction because the matter was so fixed that—

"neither you nor I nor any one else can now possibly disinherit you or change the matter in any way. * * * In fact, I never knew before that it was possible for any one to have an income so thoroughly protected."

She made no objection to this situation, nor did she in any way intimate that she had been deceived, or did not understand what had been done. There was no suggestion of dissatisfaction until several months had passed, and even then, through a series of letters, no claim of deception or misrepresentation. The conclusion of the court below that her signature to the instrument was deliberate and intelligent must be affirmed.

[3, 4] Plaintiff further insists that the deed was, as matter of law, improvident because of the combined effect of these circumstances: She had no independent advice, but relied upon her brother, the trustee, whose children were ultimate beneficiaries; there was no power of revocation, and she was not explicitly cautioned as to this; and the trustee had the power to suspend the income. We are satisfied that no one of these facts, nor all together, in the light of the whole record, raise any inference of law that the deed should be vacated. Lack of independent advice is a circumstance which might well turn the scale, if there were any reason to think that the trustee had taken an advantage; but it will not of itself call for annulment. Zimmerman v. Frushour, 108 Md. 115, 69 Atl. 796, 16 L. R. A. (N. S.) 1087, 15 Ann. Cas. 1128. The absence of power of revocation and of explicit caution thereon were once thought fatal (Everitt v. Everitt, L. R. 10 Eq. 405), but it is now clear that they are only circumstances, and not of controlling force (Dutton v. Thompson, L. R. 23 Ch. Div. 278; Underhill on Trusts, p. 99; Wald's Pollock on Cont. p. 379; Jones v. Clifton, 101 U. S. 225, 230, 25 L. Ed. 908), especially when power of revocation would be inconsistent with the main purpose of the trust (Dayton v. Stewart, 99 Md. 643, 650, 59 Atl. 281; Wallace v. Industrial Co., 29 R. I. 550, 560, 73 Atl. 25.

[5] The discretion given to the trustee to suspend payments of income to Mrs. Whiteside and allow it to be added to the principal was essential to the purpose of the trust, in order that the income might not be reachable by creditors or assignees, and courts of equity would protect the beneficiary as against any fraudulent exercise or abuse of this discretion. 2 Perry on Trusts, § 510. The fact that the trustee's daughters were included in the class which was the ultimate contingent beneficiary is not significant. Their interest was postponed till the death of Mrs. Whiteside and the death without issue of her then infant daughter. In that event, this class was (almost certainly) the sole next of kin on the mother's side and the natural beneficiary. The selection of this class is no indication of fraud.

Other less important criticisms are likewise not vital. Neither singly or collectively do they justify cancellation. When we consider the respective parts which plaintiff and defendant played in the creation of this fund, the necessity that plaintiff should be protected against herself, if it was to continue to support her, the devising of this trust

with the dominant purpose of protecting plaintiff, and note also the highly probable, if not certain, prompt, and effective dissipation of the fund, if this trust had not been made substantially as it was made, only some imperative rule of law could justify a court of equity in directing the fund to be surrendered.

The decree of the District Court is affirmed.