## FRICKE v. WEBER.
### No. 9722.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1944.

Jay P. Taggart, of Cleveland, Ohio (Spieth, Taggart, Spring & Annat, Lawrence C. Spieth, Jay P. Taggart, Morley, Stickle & Murphy, and Ralph Stickle, all of Cleveland, Ohio, on the brief), for appellant.

Charles R. Berne, of Cleveland, Ohio (Ulmer, Berne & Gordon and Charles R. Berne, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

In an action for accounting and equitable relief appellant was ordered to pay to appellee $10,000, the face value of certain Liberty Bonds found to have been held in trust by appellant for appellee, together with interest on the principal sum. The case arises out of the following facts:

The appellee is the son of Mrs. Mary Weber, deceased, a resident of Cleveland, Ohio, who some time early in 1933 employed appellant, who had had active accounting experience and had practiced law in Cleveland since 1921, as her attorney and confidential adviser. Mrs. Weber, then a

woman of seventy-four, delivered to appellant personal assets, including bank books, jewelry, and $25,000 worth of United States Liberty Bonds. Appellant at the time made no record of the property delivered to him, although when asked in August 1934, and on later occasions, he gave Mrs. Weber an itemized record of the bonds and of certain transfers made by him. Appellant continued to hold and manage Mrs. Weber's property until her death in 1940, and thereafter acted as executor of her estate.

Some time previous to 1933 appellee had been divorced from his wife and a judgment of $25,000 alimony had been entered against him in Cuyahoga County, Ohio. Appellant testified in effect that Mrs. Weber desired to make a financial provision for her son which could not be applied to the judgment in the divorce case. On July 5, 1933, and July 12, 1933, acting on Mrs. Weber's instructions, appellant wrote the appellee, who was then residing in New York City, and made certain proposals as to the nature of the contemplated arrangement. The first letter contained a copy of a proposed trust agreement between Mrs. Weber and appellee, establishing a trust of $11,000 for the benefit of appellee. The particular plans discussed in these letters were not carried out, and on July 25, 1933, appellant wrote to appellee, "Upon talking things over with mother * * * we concluded your mutual interest would be best taken care of by someone in whom mother and you as well, could have absolute confidence and who, under no circumstances would divulge any of the information he had concerning this transaction. Mother has therefore given to me personally for herself and in your behalf, $10,000.00 worth of Liberty Bonds. I am going to keep these and give to mother the coupons whenever they are due and mother wants them.

"In case anything should happen to her, which God forbid, although it is reasonable to anticipate that she, as well as all of us, will some day pass on, I would have these Liberty Bonds for you. Since there is no record of them being kept anywhere, this should protect you absolutely."

On July 30, 1933, appellee answered that he was in complete accord with this method of handling the Liberty Bonds. In 1936 a settlement of the alimony matter was made, and the judgment against appellee was released. No notice was ever given the appellee that the arrangement of July 25, 1933, had been in any way modified.

After the death of Mrs. Weber in 1940, the appellant wrote appellee that he had in his possession at the time Mrs. Weber died "$27,000 worth of bonds belonging to mother which I had held for years, and before you received your $11,000 Mrs. Ravenscroft $10,000 and Mort $2,000 I had that much more." The appellee promptly replied that with reference to the sum of $11,000 he could not trace "an amount anywhere near the sum and would appreciate if possible a little more detail." The appellant answered that he remembered that "some six or seven years ago" Mrs. Weber said "she was going to send to Mrs. Ravenscroft $10,000.00 and her jewelry and that she was going to send you $10,000.00 also and $1,000.00 extra because you received none of the jewelry," and stated that as far as he knew this money was sent to a bank named by the appellee. The appellee replied that his mother had told him that she had placed a $10,000 government bond in trust with the appellant. After this action was instituted, the appellant in his answer stated that in 1936, after the judgment for alimony had been released of record, Mrs. Weber had instructed him that all former instructions as to the distribution of her bonds then in his possession or which should be in his possession at the time of her death were cancelled and that upon her death all property in his possession belonging to her should be included in her legal estate and administered therein. Appellant declared that this instruction had been complied with and that all property delivered to him was fully accounted for in the administration of the estate.

The District Court found that a trust with appellant as trustee was established July 25, 1933 for the benefit of the appellee in United States Liberty Bonds in the face amount of $10,000; that the appellant accepted the trust; that it immediately became operative without reservation of any right to alter, revoke or modify, and was unrevoked at the death of Mary Weber. It found that the appellee at no time received from the appellant or otherwise the trust property, its avails or proceeds, held that the appellant defaulted in his fiduciary duty in failing to deliver to the appellee the corpus of the trust estate, and rendered judgment for the face value of the bonds.

The appellant vigorously contends that the evidence does not establish the existence of a trust, but we think that the finding of the District Court is amply support-

ed. The various letters sent in July 1933, discussing and embodying the terms of the trust, were drafted by appellant as Mrs. Weber's attorney and confidential adviser, and following the receipt of instructions from her.

The trust agreement was made in Ohio and is governed by Ohio law. Mayfield v. First National Bank of Chattanooga, Tenn., 6 Cir., 137 F.2d 1013, 1018. The Ohio decisions follow the common law as to the creation of trusts inter vivos and the duties of trustees. A trust may be created in Ohio by oral agreement. Harvey v. Gardner, 41 Ohio St. 642; Russell v. Bruer, 64 Ohio St. 1, 59 N.E. 740; Jones v. Luplow, 13 Ohio App. 428. Appellant's unequivocal statement that "Mother has therefore given to me personally for herself and in your behalf, $10,000.00 worth of Liberty Bonds," established by clear, certain and conclusive evidence, Russell v. Bruer, supra, the delivery of the bonds by Mrs. Weber and the creation by her of an oral trust for the benefit of the appellee, as well as the acceptance of the trust by the appellant. Since appellant concedes that the Liberty Bonds were deposited with him prior to July 25, 1933, and that he wrote the letter on that date, the material facts as to the creation of the trust are undisputed. As no reservation was made of a right to alter or revoke the trust, under both common law and the Ohio decisions it was irrevocable without the consent of the beneficiary. Jones v. Luplow, supra; Whiteside v. Verity, 6 Cir., 269 F. 227; Hughes v. Commissioner of Internal Revenue, 9 Cir., 104 F.2d 144, 147; Crutcher v. Joyce, 10 Cir., 134 F.2d 809, 816.

But the appellee did not consent to the modification or revocation of the trust. While appellant declares that Mrs. Weber in 1936 instructed him to disregard all former instructions as to the trust he at no time notified appellee of this fact, although after acceptance of the trust appellant rested under an obligation to give the appellee full notice and information as to any matters touching his rights as beneficiary. Morris v. Mull, 110 Ohio St. 623, 144 N.E. 436, 39 A.L.R. 323.

Appellant also urges that no trust was established because the subject-matter of the trust was not definite nor definitely ascertainable. The letter of July 25th does not describe the bonds by any specific designation and thus appellant contends that the trust fails for want of a corpus. However, we think that the clear intention of the settlor as manifested in the evidence was that the appellee should be the beneficiary of a trust in a specified $10,000 of bonds. It was appellant's duty as trustee to take possession of the trust property promptly and to retain it securely under his control. Smith v. Fuller, 86 Ohio St. 57, 62, 99 N.E. 214, L.R.A.1916C, 6, Ann.Cas. 1913D, 387; Village of Brookfield v. Pentis, 7 Cir., 101 F.2d 516. In order to take possession of $10,000 of bonds for the trust estate, appellant was required to segregate that portion and to maintain a separate account of the income and status of these particular bonds. This he failed to do at any time, although he recognized the trust as existing for a considerable period, even notifying appellee's sister of the transaction almost a year after it occurred. Appellant cannot avail himself of the fact that a precise description of the corpus and an itemized account of the dealing with these particular bonds are lacking, for they are lacking because of his own dereliction in the performance of his fiduciary duty. When a trustee fails to keep proper accounts, all doubts will be resolved against him. Bone v. Hayes, 154 Cal. 759, 99 P. 172; Crimp v. First Union Trust & Savings Bank, 352 Ill. 93, 185 N.E. 179; McKibben v. Byers, 138 Kan. 216, 25 P.2d 357; Smith v. Tolverson, 190 Minn. 410, 252 N.W. 423.

Appellant contends that the $10,000 of bonds were part of the $27,000 of bonds which were distributed by him as executor of Mrs. Weber's estate. The burden was on appellant to establish this affirmative contention by a preponderance of the evidence. His oral testimony upon this subject was confused and contradictory and was in conflict with his own letter to the appellee sent in June, 1940, in which he says that he had $27,000 worth of bonds when Mrs. Weber died, and that before appellee received his $11,000, Mrs. Ravenscroft $10,000 and Mort $2,000, appellant "had that much more." This is a deliberate statement by an accountant and attorney, that he had $23,000 more either in bonds or other assets, than the $27,000 worth of bonds. Out of this $23,000 he concedes that $10,000 had been set aside for appellee, and thus fails to sustain the burden of showing that the trust fund was merged in the $27,000. The appellant kept no original account of what was delivered to him in 1933,

and his own confused testimony fails to rebut the plain meaning of his letter. The finding of the District Court upon this point is amply sustained by the evidence.

Since the appellant failed to establish that the bonds held in trust for the appellee were part of the bonds which he testified he turned over to himself as executor of Mrs. Weber's estate, the District Court did not err in not crediting the distributive payment to the appellee from the estate of Mrs. Weber against appellant's personal liability.

The appellee at all times asserted his right to the trust estate, and therefore is not estopped to maintain this action.

The decree is affirmed.